UNITED STATES of America, Appellee,

v.

**James Earl PAIVA,
Defendant, Appellant.**

**No. 88–2041.**

United States Court of Appeals,
First Circuit.

Heard April 4, 1989.
Decided Dec. 21, 1989.

---

James R. Bushell, Portland, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., were on brief for the U.S.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

Appellant-defendant James Earle Paiva appeals from judgments of conviction on three counts of a six count Indictment entered in the United States District Court for the District of Maine. Count I of the Indictment charged Paiva, pursuant to 21 U.S.C. § 846, with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). Count II charged Paiva with aiding and abetting certain named individuals in distributing quantities of cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). Counts III, IV and V charged Paiva with willfully attempting to evade the payment of income taxes and filing false income tax returns for the years 1982, 1983 and 1984 in violation of 26 U.S.C. § 7201. Count VI alleged that Paiva conspired with certain named individuals to defraud the United States by impeding and impairing the functions of the Internal Revenue Service ("IRS") on the computation and collection of income taxes in violation of 18 U.S.C. § 371.

On May 24, 1988, on defendant's motion and with the consent of the government, the court transferred Counts III, IV and V to the United States District Court for the District of Massachusetts.[1] On August 3, 1988, trial on Counts I, II and VI began in the United States District Court for the District of Maine before Honorable Jose A. Fuste, sitting by designation, and a jury. On August 5, 1988, the jury found Paiva guilty on all three charges. Paiva now appeals the judgments of conviction on Counts I, II and VI.

On appeal, Paiva assigns several errors to the district court. First, Paiva argues that the district court committed prejudicial error in denying appellant-defendant's motion for a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. Second, Paiva asserts that the district court erred in admitting lay opinion testimony identifying a substance found among Paiva's personal effects. Third, Paiva argues that the district court erred in failing to strike the testimony of a govern-

---

* Of the District of Massachusetts, sitting by designation.

1. On September 26, 1988, the District Court for the District of Massachusetts returned Counts III, IV and V to the United States District Court for the District of Maine. On October 3, 1988, Paiva pled guilty to Counts III, IV and V.

ment witness, Detective Pike, identifying a substance found in a co-conspirator's apartment. Further, Paiva contends that the court committed reversible error when it explained this witness's testimony to the jury while denying the motion to strike. Last, Paiva contends that the evidence was insufficient to support his convictions on all three counts of the Indictment. Upon consideration, we find that the appellant-defendant's contentions are without merit and that the evidence supports his convictions. We therefore affirm Paiva's convictions on all three counts.

## I.

In essence, this case involves a conspiracy to distribute cocaine beginning sometime in 1982 and continuing until sometime in 1984. At trial, various individuals involved in these drug transactions, including co-conspirators, testified against appellant-defendant Paiva. One such witness, William McGrane, unnamed in the indictment, testified under a cooperation agreement with the government. According to his testimony, McGrane first met Paiva through a bookie for whom Paiva was a money courier. McGrane testified that he began using cocaine in 1981 or 1982 and soon needed to sell cocaine to support his habit. According to his testimony, McGrane approached Paiva for information about where to obtain cocaine. Paiva brought McGrane to Portland, Maine where he introduced McGrane to Robert Anderson, an alleged drug dealer and the alleged central figure in all these drug transactions. McGrane testified, over a hearsay objection,[2] that he and Anderson discussed in the presence of Paiva amounts and prices of cocaine and the use of pay telephones and other means for conducting a drug business. As McGrane stated, Paiva later reviewed the meeting with him to assure that he understood everything, particularly regarding the security measures. McGrane testified that he then began purchasing cocaine from Anderson in

amounts ranging from quarter-ounces to four ounces at a rate of $2,200 to $2,300 per ounce. For the first two or three transactions, McGrane testified, Paiva picked up the cocaine from Anderson in Maine and delivered it to McGrane at which time McGrane gave Paiva the money. Except for one transaction, McGrane stated, he bought all his cocaine from Anderson until 1984 when Anderson eventually introduced McGrane to Mark Needelman as an alternative source of cocaine.

Floyd Jenkins, named in Count II of the Indictment as a cocaine distributor and Carl Morrill, named in Count I as a conspirator, both testified. Floyd Jenkins, who testified under a grant of immunity, began buying and selling cocaine to support his own cocaine habit. Jenkins testified that he bought this cocaine from Joseph Bilodeau, a supplier who obtained the cocaine from Robert Anderson and with whom Jenkins later formed a partnership.

Carl Morrill, who testified under a plea agreement, was also a drug trafficker. Morrill stated that he bought cocaine from two men, Truman Dongo and Richard Eifel. Morrill testified that he was present on a number of occasions when Eifel bought drugs from a man whom Morrill later learned was Anderson. On one occasion, according to the testimony of Jenkins and Morrill, after $34,600 of Morrill's money was allegedly stolen by Eifel, Morrill and Jenkins met with Anderson and another man. Jenkins identified this other man as Paiva; Morrill only remembered that the man's name was "Jimmy" or "Gerry." After Anderson and Paiva assured Morrill that they were not responsible for the theft, Morrill testified, he agreed with Anderson to continue buying cocaine on a cash basis.

According to the testimony of Jenkins, he was by this time, January 1983, partners with Bilodeau. He and Bilodeau agreed to supply Morrill with cocaine obtained from the same source, Robert Anderson. As Jenkins stated, during the first transaction,

**2.** The court conditionally admitted the testimony as statements of a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence, subject to a final determination at the close of the evidence.

Morrill gave $20,000 to $30,000 to Jenkins to pass to Bilodeau, who would then purchase the cocaine. This first time, however, Jenkins accompanied Bilodeau to Portsmouth, New Hampshire. Jenkins testified that upon arrival at Portsmouth circle, Bilodeau made a phone call after which Paiva arrived. According to Jenkins' testimony, Bilodeau and Paiva then went into a motel room, and Bilodeau returned with the cocaine. Bilodeau and Jenkins then returned to Maine where they distributed a portion of the cocaine to Morrill. Several transactions, following this pattern, ensued thereafter. During these subsequent transactions, however, Bilodeau went to Portsmouth, New Hampshire alone.

According to the testimony, the partnership between Bilodeau and Jenkins had dissolved by March of 1983. Also, Morrill had been arrested on cocaine charges. Nevertheless, as they both testified, Morrill continued to buy cocaine through Jenkins who approached Anderson directly. Jenkins testified that he and Anderson agreed that Paiva would continue to supply the cocaine at Portsmouth circle. Anderson gave Jenkins a telephone number for Paiva, Jenkins stated, at which he reached Paiva on several occasions. As Jenkins testified, he continued to buy cocaine from Paiva until he became dissatisfied and began buying from Truman Dongo. In the summer of 1983, Jenkins was kidnapped and shot, and Dongo was murdered. Thereafter, Jenkins began cooperating with the police and agreed to testify.

Mark Needelman, who was convicted and sentenced for cocaine trafficking, also testified at trial. Needelman's name appeared in Anderson's records. Needelman testified that he bought his cocaine from Anderson until 1982. When Anderson was arrested, however, Needelman stated that Anderson directed him to Paiva for cocaine until he was released. Needelman testified that he first met Paiva in New Hampshire to buy cocaine, but that subsequent purchases of cocaine, in amounts ranging from two to four ounces, were made in Massachusetts. In the fall of 1983, when Paiva was sentenced to jail on a gun charge, Needelman stated that he assumed Paiva's role as Anderson's subordinate and took over Paiva's accounts in the Portsmouth area. Each week while Paiva was in jail, Anderson directed Needelman to set aside $1,000 in a safety deposit box for Paiva; thus each week Anderson received $1,000, Needelman received $1,000, and Paiva received $1,000. In January 1984, Needelman was arrested while he was selling cocaine in exchange for $68,000. A telephone book seized in connection with that arrest contained Paiva's first name and several telephone numbers that Paiva and Anderson had given Needelman. Before his trial, Needelman fled with Anderson, using $138,000 that he and Anderson had hidden in the wall of an apartment. Tired of running for three years, Needelman entered into a cooperation agreement with the government and agreed to testify.

These four men, William McGrane, Floyd Jenkins, Carl Morrill and Mark Needelman, were the only persons involved in the drug transactions with Paiva who testified. Joseph Bilodeau was available at trial, but neither party called him. Robert Anderson, the apparent ring leader, remained a fugitive at the time of trial.

Two other witnesses, Christina Christo and Detective Kenneth Pike, also testified for the government at trial. Christina Christo, the daughter of Paiva's ex-wife, testified that she found a small bag containing a white powdery substance in Paiva's shoe. She identified this substance, over the defendant's objection, as cocaine.

Detective Pike testified that he had been investigating Robert Anderson since 1982. Pike testified that after an informant made two controlled purchases, he obtained a warrant to search Anderson's apartment. In Anderson's apartment, Detective Pike found $51,000 in cash and a personal telephone book which contained Paiva's name and address. As Pike testified, one number for Paiva was scratched out and replaced with two other numbers. A third number was designated "sister," and a fourth number had the word "machine" beside it. Anderson's book also contained the names of several drug traffickers, in-

cluding Bilodeau, Eifel and Needleman. Detective Pike further testified that Anderson's telephone had nineteen buttons for automatic dialing. Although only numbers, not names, appeared next to the buttons, Detective Pike stated that beside the telephone he found a piece of paper with names written on it. Beside the number 1, the name "Jim" appeared. Upon dialing number 1, Detective Pike testified that he was connected to the telephone listing for Paiva. In the apartment, Detective Pike also found records that he believed were of cocaine transactions. Detective Pike further testified that in Anderson's apartment he discovered and seized a white powder. Detective Pike stated that he sent the powder to the lab and that he field tested the powder. Pike identified the substance, over the defendant's objection, as cocaine.

Paiva's defense at trial was that his relationship with Anderson, McGrane and Needelman involved gambling activities and not drug trafficking. Paiva contended that these witnesses testified against him and lied in order to obtain benefits from the government. Paiva did not dispute that he underreported his income for the years 1982, 1983, and 1984. Paiva denied, however, that the excess money was the product of drug trafficking. Rather, Paiva asserted that this money was the product of gambling activities.

After a full trial and deliberation, the jury found Paiva guilty on all three charges: 1) conspiracy with intent to distribute cocaine; 2) aiding and abetting the distribution of cocaine; and 3) conspiracy to defraud the United States by impeding and impairing the functions of the IRS in the computation and collection of income taxes. Appellant-defendant Paiva now appeals the judgments of conviction on these three charges. Paiva assigns four errors to the district court which we address in turn.

**3.** Count I named Robert Anderson, Mark Needelman, Carl Morrill and Joseph Bilodeau as co-conspirators.

## II.

Appellant-defendant Paiva first contends that the District Court committed prejudicial error by denying his motion for a bill of particulars. Prior to trial, Paiva filed a motion for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. As to Count I of the Indictment charging conspiracy, Paiva requested the precise dates upon which the conspiracy began and ended, and the precise dates upon which he allegedly joined and withdrew from the conspiracy. Paiva further requested the names of all persons, excluding those named in Count I,[3] with whom he allegedly conspired; the dates and places these persons joined the conspiracy; and the locations, in addition to the District of Maine, where the members of this conspiracy allegedly conspired. As to Count I, Paiva also sought all acts, statements and witnesses, including precise dates and locations, upon which the government would rely to prove the existence of Paiva's involvement in the conspiracy. Further, Paiva requested information regarding the acts by which and the occasions on which he allegedly caused "various quantities of cocaine to be transported ... into the District of Maine," as well as the exact quantities of cocaine and the places and persons to which it was transported.

Appellant-defendant Paiva made similar requests in his motion for a bill of particulars as to Count II charging him with aiding and abetting. Paiva sought the number of occasions, including dates, times and places, that he allegedly provided Floyd Jenkins and Joseph Bilodeau [4] with cocaine and the exact amount of cocaine. Paiva further requested the names of all persons present or involved in these alleged transactions and whether any of these persons were government agents. Regarding Count VI, charging Paiva with conspiracy to defraud the United States by interfering with tax collection, Paiva sought the

**4.** In Count II, Paiva was charged with aiding and abetting Floyd Jenkins and Joseph Bilodeau in distributing cocaine. Joseph Bilodeau was also named as a co-conspirator in Count I and Count III; Floyd Jenkins was not so named.

names, addresses and involvement of all members of the conspiracy, excluding Joseph Bilodeau and Robert Anderson who were expressly named in the Indictment. Paiva also sought the dates, times, and places of any particular acts of the conspiracy in which Paiva allegedly participated, except those acts expressly included in the Indictment, together with the names of the other alleged participants.

The district court denied Paiva's motion for a bill of particulars. In denying the motion, the district court wrote:

> The Court finds the indictment in each of Counts I, II, and VI sufficient to apprise the Defendant of the charges made against him, to enable him to prepare his defense thereto without surprise by the Government and to permit the judgment entered herein to be pleaded in bar of any second prosecution for the same offense. A Bill of Particulars is not warranted. The within motion is hereby *Denied.*

On appeal, appellant-defendant Paiva argues that the district court's denial of the motion for a bill of particulars was prejudicial error. Appellant does not disagree with the district court's conclusions that the Indictment was sufficient both to apprise him of the charges against him and for double jeopardy purposes. Appellant, however, does contend that the Indictment was insufficient to enable him to prepare his defense without surprise by the government.

The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy. *United States v. Leach,* 427 F.2d 1107, 1110 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970); *United States v. Roya,* 574 F.2d 386, 391 (7th Cir.), *cert. denied,* 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978); *United States v. Addonizio,* 451 F.2d 49, 64 (3rd Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). The decision to grant or to deny a defendant's motion for a bill of particulars is

entrusted to the sound discretion of the district court. *Will v. United States,* 389 U.S. 90, 98–99, 88 S.Ct. 269, 275–76, 19 L.Ed.2d 305 (1967); *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927); *United States v. Tarvers,* 833 F.2d 1068, 1076 (1st Cir.1987); *Leach,* 427 F.2d at 1110. The 1966 amendment to Rule 7(f) of the Federal Rules of Criminal Procedure, intended to liberalize discovery by eliminating the requirement that cause be shown before a court may grant a bill of particulars, did not take away a district court's discretion in deciding such motions. *Leach,* 427 F.2d at 1110; *Addonizio,* 451 F.2d at 64; Fed.R.Crim.P. 7(f) advisory committee's note.

Upon review, a court of appeals will reverse a judgment of conviction only if the district court clearly abused its discretion in denying a bill of particulars. *Wong Tai,* 273 U.S. at 82, 47 S.Ct. at 302; *United States v. Maull,* 806 F.2d 1340, 1345 (8th Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987). To establish such an abuse of discretion requiring reversal, a defendant must demonstrate actual surprise at trial or actual prejudice to his substantial rights. *Leach,* 427 F.2d at 1110; *United States v. Montemayor,* 703 F.2d 109, 117 (5th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Colson,* 662 F.2d 1389, 1391 (11th Cir.1981); *Williams v. United States,* 289 F.2d 598, 601 (9th Cir.1961). Accordingly, appellant-defendant Paiva bears a heavy burden on appeal in establishing that the district court erred in denying his request for a bill of particulars.

Although Paiva asserts several general allegations of prejudice, he has failed to demonstrate actual surprise at trial or actual prejudice to his substantive rights. Paiva generally contends that denial of the requested bill of particulars disabled him in preparing his defense without surprise. Specifically, Paiva argues that because Count II of the Indictment did not inform him of the number of transactions he allegedly aided and when and where they occurred, he was prevented from developing an alibi defense. Initially, regarding Count

I, Paiva contends that he was unable to develop an alibi defense because Count I failed to precisely define the time period of the conspiracy,[5] to specify the dates on which Paiva joined and withdrew from the conspiracy, and to identify his acts of participation in the conspiracy.

Upon examination, Paiva's general allegations do not establish actual surprise or prejudice. Count II alleged that Paiva aided and abetted the distribution of "quantities of cocaine," and thus, sufficiently notified Paiva that the charge involved more than one transaction. Additionally, prior to trial the government furnished Paiva with telephone toll records which indicated that Count II involved more than one transaction and provided the dates of these transactions. Furthermore, the government's temporal specifications in the Indictment, such as "early 1983" and "the fall of 1983," were sufficiently narrow to allow Paiva to prepare his defense without surprise. Finally, although Paiva now claims that these vague descriptions prevented him from preparing an alibi defense, at trial Paiva never even attempted to develop an alibi defense, but relied solely on his "gambling" defense and even concealed that he knew both Anderson and McGrane.

■ Attempting to establish an abuse of discretion, Paiva further argues that the government's failure to disclose that one of his overt acts in furtherance of the conspiracy was accepting money while in jail prejudiced him because he was thus unable to effectively rebut these allegations. Appellant, however, overlooks the fact that Count I charged him with conspiracy pursuant to 21 U.S.C. § 846. Section 846 does not require the government to plead or prove any overt act in furtherance of the conspiracy. *United States v. Williams*, 809 F.2d 75, 80 (1st Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987); *United States v. DeJesus*, 520 F.2d 298, 301 (1st Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1975).

Appellant-defendant Paiva's final argument is that he was prejudiced by the denial of his request for the identities of all members of the alleged Count I conspiracy because he was unable to anticipate the government's witnesses. Paiva contends that he was surprised because although the government did not name Jenkins in Count I as a member of the conspiracy, Jenkins was an important witness at trial. Similarly, Paiva alleges prejudice because of the government's failure to call Bilodeau, named in Count I, at all. As the government emphasizes in its brief, however, Jenkins was a predictable witness because he was named in Count II of the Indictment which involved activities that, by date, drug and charge, were closely related to the allegations in Count I. Furthermore, although the government did not use Bilodeau as a witness, Paiva knew Bilodeau was available at trial to be called by either party.

Despite these general protestations of prejudice, Paiva has failed to demonstrate actual prejudice or actual surprise at trial. Appellant Paiva offers no evidence of actual surprise or prejudice; during the trial, Paiva never even alleged surprise or requested a continuance. *See Williams*, 289 F.2d at 601. Without a showing of actual prejudice or surprise, we find no abuse of discretion. The district court's denial of Paiva's motion for a bill of particulars was a proper exercise of its discretion.

III.

■ Second, appellant-defendant Paiva asserts that the district court abused its discretion in admitting the testimony of a lay witness, Christina Christo, who expressed her opinion as to the identity of a substance. During the trial, Christina Christo, the 21 year-old daughter of Paiva's ex-wife, Delores (Christo) Paiva, testified for the government. Ms. Christo testified that in 1983, while she resided with her mother and Paiva in a condominium in Florida, she discovered inside one of Paiva's

---

**5.** Count I of the Indictment specified that the conspiracy "commenc[ed] on or about 1982 and continu[ed] thereafter until into 1984...."

shoes a plastic bag containing a white powder. Ms. Christo testified that prior to 1983 she had used and tasted cocaine on many occasions and had developed a cocaine problem at age fourteen. Ms. Christo described the substance she found inside Paiva's shoe as a white powder with little bits of rocks in it. She stated that she tasted this white powder and that it tasted like cocaine. Ms. Christo testified that based upon looking at the substance and tasting it, the substance, in her opinion, was cocaine.

The appellant-defendant Paiva objected to Ms. Christo's testimony. Prior to trial, Paiva brought a motion in limine challenging Ms. Christo's testimony as inadmissible under Rule 701 because identification of a substance, such as cocaine, is beyond the common knowledge of ordinary persons. In this motion, Paiva also argued that the testimony was inadmissible under 702 unless the government qualified Ms. Christo as an expert.

The district court deferred ruling on the defendant's objections until the testimony was elicited at trial. During Ms. Christo's testimony at trial, Paiva again objected.[6] The court allowed Ms. Christo's testimony as lay witness opinion testimony under Rule 701. On appeal, Paiva challenges the district court's ruling admitting Christina Christo's opinion testimony identifying the substance she found as cocaine.

Rule 701 of the Federal Rules of Evidence, entitled "Opinion Testimony by Lay Witnesses," provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The admissibility of lay opinion testimony pursuant to Rule 701 is committed to the sound discretion of the trial judge, and the trial judge's admission of such testimony will not be overturned unless it constitutes a clear abuse of discretion. *United States v. Burnette*, 698 F.2d 1038, 1051 (9th Cir.), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980). *See United States v. Honneus*, 508 F.2d 566, 576 (1st Cir.1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975).

This court has never addressed the precise issue of whether a drug user, unqualified as an expert and testifying as a lay witness, is competent to express an opinion that a particular substance is a drug, such as cocaine or marijuana. *See Honneus*, 508 F.2d at 576. In *Honneus*, however, we did rule that the trial judge was within his discretion in allowing lay witnesses, who were drug users, to make comparisons and express opinions as to the similarity between the substance at issue and marijuana. *Id.* In accord with our holding in *Honneus*, the admission of Ms. Christo's testimony that the substance she found in Paiva's shoe looked and tasted like cocaine was clearly proper and within the trial judge's discretion.

As to Ms. Christo's definite opinion identifying the white powder as cocaine, however, we do not receive any guidance from our precedents. *See id.* Paiva contends that the district court erred in admitting Ms. Christo's testimony as proper lay opinion testimony because identification of a controlled substance, such as cocaine, is beyond the common knowledge of an ordinary person. Under Rule 701, Paiva argues, lay witnesses may only express opinions as to subjects within the common knowledge of an ordinary person. Arguing that identification of a substance such as cocaine is only a proper subject for expert opinion testimony, and not lay opinion testi-

---

**6.** While Ms. Christo was testifying, counsel for the defendant objected twice. Although the defendant's counsel only expressly mentioned Rule 702, the substance of the objections, foreshadowed by the motion in limine on which the court had deferred ruling, was based on Rule 701 and Rule 702. Thus, the defendant preserved this issue for appeal, and we are not limited to a review only for the existence of "plain error." *See United States v. Griffin*, 818 F.2d 97, 99–100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987).

mony, Paiva directs our attention to cases in which drug users have been qualified as experts before expressing opinions as to the identity of a substance, the source of a controlled substance or the use of drug paraphernalia. *See United States v. Atkins,* 473 F.2d 308, 313–14 (8th Cir.), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973); *United States v. Johnson,* 575 F.2d 1347, 1360–61 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *United States v. Rivera Rodriquez,* 808 F.2d 886, 888 (1st Cir. 1986). Paiva further emphasizes other cases in which witnesses expressed opinions identifying substances such as cocaine after first being qualified as experts. *See United States v. Haro–Espinosa,* 619 F.2d 789, 795 (9th Cir.1979); *United States v. Burmudez,* 526 F.2d 89, 97 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). The various cases highlighted by Paiva, however, do not establish that identification of a substance, such as cocaine, is exclusively within the domain of expert opinion evidence and an improper subject for lay opinion testimony. Although a drug user may not qualify as an expert, he or she may still be competent, based on past experience and personal knowledge and observation, to express an opinion as a lay witness that a particular substance perceived was cocaine or some other drug. *See United States v. Harrell,* 737 F.2d 971, 978–79 (11th Cir.1984), *cert. denied,* 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); *United States v. Zielie,* 734 F.2d 1447, 1456 (11th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Sweeney,* 688 F.2d 1131, 1145–46 (7th Cir.1982); *United States v. Gregorio,* 497 F.2d 1253, 1263 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *Cf. United States v. Huddleston,* 810 F.2d 751, 754 (8th Cir.1987) (quality of cocaine).

We recognize that in the past lay witnesses may have been considered incompetent to express opinions as to matters which were beyond the realm of common experience and which required special knowledge and skill. *See Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846–47, 848 (10th Cir.1979); 2 Wigmore, Evidence §§ 555–57 (Chadbourne rev. 1979); 7 Wigmore, Evidence § 2090 (Chadbourne rev. 1978). In recent years, however, a liberalization of Rule 701 regarding lay opinion testimony has occurred. *See* 3 Weinstein's Evidence ¶ 701[01], [02] (1988). Although lay opinion evidence was once disapproved, the modern trend favors the admission of opinion testimony, provided it is well founded on personal knowledge and susceptible to cross-examination. *Teen–Ed, Inc. v. Kimball Intern, Inc.,* 620 F.2d 399, 403 (3d Cir.1980); 7 Wigmore, Evidence §§ 1917, 1918 and 1929 (Chadbourne rev. 1978). The liberalization of Rule 701 has blurred any rigid distinctions that may have existed between lay witnesses and expert witnesses. 3 Weinstein's Evidence ¶ 701[02] (1988). No longer is lay opinion testimony limited to areas within the common knowledge of ordinary persons. Rather, the individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge. *Teen–Ed,* 620 F.2d at 403–04; *Farner v. Paccar, Inc.,* 562 F.2d 518, 529 (8th Cir. 1977); *United States v. Walker,* 495 F.Supp. 230, 232–33 (W.D.Penn.1980). *See also Soden v. Freightliner Corp.,* 714 F.2d 498, 511 (5th Cir.1983).

Accordingly, we conclude that the district court did not abuse its discretion in admitting Ms. Christo's opinion that the substance she found was cocaine. Ms. Christo's opinion was based on her past experience with cocaine and her personal observations, the appearance and taste, of the substance she found. Thus, her opinion was rationally based on her own perceptions and, as the district court found, would assist the jury in understanding her testimony. Thus satisfying the two requirements of Rule 701, admission of Ms. Christo's opinion identifying the substance she found in Paiva's shoe as cocaine was clearly within the district court judge's discretion.

### IV.

Appellant-defendant Paiva's third contention is that the district court commit-

ted prejudicial error in denying Paiva's objection to strike the testimony of Detective Sergeant Kenneth Pike identifying a substance as cocaine. Paiva also argues that the court's remarks regarding Detective Pike's testimony constitute reversible error because the judge's comments amounted to testimony by the judge in violation of Rule 605 of the Federal Rules of Evidence. Fed. R.Evid. 605.

At trial, Detective Pike testified that he worked for the Portland Police Department for almost 15 years. He further stated that in 1982 he was a detective working in the narcotics unit, specifically conducting drug and vice investigations. Detective Pike testified that in 1982, he was investigating an individual named Robert Anderson, and in the course of that investigation obtained a search warrant for Anderson's apartment. When conducting the search of Anderson's apartment, Detective Pike stated that he discovered and seized a white powder. Detective Pike stated that he sent the powder to the lab and that he field tested the powder. In response to the question, "How much white powder did you find?," Detective Pike stated "a little over two ounces of cocaine." Then, Detective Pike testified that the white powder turned out to be "cocaine." Defense counsel objected and moved to strike this testimony on the grounds that Detective Pike was not qualified as an expert and that his identification of the substance was based on the lab report which was hearsay. The district court refused to

strike the testimony. The court apparently recognized the lab report as hearsay, but allowed the testimony identifying the substance as cocaine to stand as a product of Detective Pike's field test. The court gave a curative instruction to the jury explaining a field test, instructing them to disregard any reference to the lab report and emphasizing that Detective Pike's identification of the substance as cocaine was based only on his field test.[7]

Paiva contends that the district court judge's comments to the jury regarding Pike's testimony violated Rule 605 of the Federal Rules of Evidence because the judge in effect testified as a witness regarding the nature and specifics of field testing.[8] Rule 605, entitled "Competency of Judge as Witness," provides: "The judge presiding at trial may not testify in that trial as a witness. No objection need be made to preserve the point." Fed.R. Evid. 605. The prohibition of Rule 605 anticipates situations where the presiding judge is called to testify as a witness in the trial—"where the judge abandons the bench for the witness stand." Fed.R.Evid. 605 advisory committee's note. See Price Bros. Co. v. Philadelphia Gear Corp., 629 F.2d 444, 447 (6th Cir.1980); United States v. Frankenthal, 582 F.2d 1102, 1107 (7th Cir.1978); Kennedy v. Great Atlantic & Pacific Tea Co., Inc., 551 F.2d 593, 597 (5th Cir.1977); Ouachita Nat. Bank v. Tosco Corp., 686 F.2d 1291, 1301 (8th Cir.1982), aff'd 716 F.2d 485 (8th Cir.1983) (en banc).

---

**7.** The district court judge commented to the jury as follows:

Ladies and gentlemen of the jury, there are two ways, and I should tell you this, there are two ways in which people who are involved in law enforcement deal with substances. The first initial way of doing it is by doing field test and nothing else but collecting, with some viles, the substance and put the substance in the viles, some colors change and from that you get prima facie evidence that it is a certain substance, cocaine or whatever. After that, usually it is sent to a lab for further analysis.

All the detective can tell us at this time is that he did the field test and that the field test, according to him, ruled positive for cocaine. Up to that point about the lab, forget about the last thing.

**8.** Paiva raises this issue for the first time on appeal; Paiva did not object to the judge's comments at trial. In the absence of a timely objection, our review is usually limited to examining the record for plain error, that is "particularly egregious errors" ... that "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); United States v. Munson, 819 F.2d 337, 340 (1st Cir.1987). Regarding a violation of Rule 605, however, our review is not so limited because Rule 605 provides that "[n]o objection need be made in order to preserve the point." Fed.R.Evid. 605.

■ We believe that Paiva's argument that the judge's explanation of a field test was impermissible is more properly addressed under federal caselaw governing a district court judge's power of comment and the inherent limitations on this power. *See, e.g., Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *Doherty v. Doherty Insurance Agency,* 878 F.2d 546 (1st Cir.1989); *Aggarwal v. Ponce School of Medicine,* 837 F.2d 17 (1st Cir.1988); *United States v. Love,* 767 F.2d 1052 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986). A federal district court judge retains the common law power to explain, summarize and comment on the facts and evidence. *Quercia,* 289 U.S. at 469–70, 53 S.Ct. at 698–99; *Doherty,* 878 F.2d at 553; *Aggarwal,* 837 F.2d at 22; Wright & Miller, Federal Practice and Procedure § 2557 (West 1971). A district court judge also has the power to question witnesses. Fed.R.Evid. 614. *See also Terrell v. United States,* 6 F.2d 498, 499 (4th Cir.1925). In commenting on the testimony or questioning witnesses, however, the judge may not assume the role of a witness. *Quercia,* 289 U.S. at 470, 53 S.Ct. at 699; *Tyler v. Swenson,* 427 F.2d 412, 416 (8th Cir.1970); *Terrell,* 6 F.2d at 499. A judge may "analyze and dissect the evidence, but he may not either distort it or add to it." *Quercia,* 289 U.S. at 470, 53 S.Ct. at 699. If a judge exceeds the limitations on his power to comment and to question, such action may constitute prejudicial error and require reversal. *See id.* at 472, 53 S.Ct. at 700; *Tyler,* 427 F.2d at 417; *Terrell,* 6 F.2d at 500.

In this case, Detective Pike never testified as to what a field test was or involved. He never testified to the manner by which he tested the substance; he never specifically stated what he did with the substance, other than stating that he weighed it and field tested it. Nor did any other witness testify at trial as to the nature of a field test. The judge's explanation of a field test, therefore, was not merely summarization or comment on testimony. In adding his explanation of a field test to the

evidence, the judge impermissibly exceeded the limitations on his power to comment.[9]

We do not believe, however, that the judge's error in this case denied Paiva a fair trial and requires reversal. Rather, we conclude that the judge's error in adding to the evidence his explanation of a field test was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). As we discuss next, Detective Pike was qualified to identify the substance he found in Anderson's apartment as cocaine. The court's statements as to what a field test involved were unnecessary to qualify Detective Pike or to establish the admissibility of Pike's testimony. The judge's statements simply gave the jury a better idea of what a field test was. The judge's statements added to the credibility of the field test upon which Detective Pike based his identification, but did not have any bearing on the admissibility of Pike's identification of the substance. Moreover, this evidence that a substance identified as cocaine was found in Anderson's apartment was of only minor importance to the government's case against Paiva; it served to corroborate the testimony of the accomplice witnesses that Anderson was a drug trafficker. Besides only being of minor significance, Pike's testimony regarding this substance constituted only a fraction of the evidence introduced at trial. Accordingly, the judge's explanation of a field test was harmless error.

■ Regarding Detective Pike's identification of the substance as cocaine, Paiva proffers two arguments that the district court abused its discretion in admitting this evidence. First, Paiva asserts that if Detective Pike's identification of the substance was based on the laboratory report, which was not in evidence, his testimony constituted inadmissible hearsay. We agree. If Pike was simply testifying as to the result of the laboratory analysis, his testimony would have been inadmissible.

**9.** We find the judge's other comments to the jury regarding Detective Pike's testimony to be proper as summarization and a curative instruction.

Detective Pike, however, also stated that he field tested the substance. His identification of the substance, therefore, could fairly have been the product of his own observations and, as such, admissible. Recognizing the ambiguity as to the basis of Pike's identification and the inadmissibility of the laboratory report, the judge gave a curative instruction directing the jurors to disregard any reference to the laboratory report. The judge also instructed the jury that all the detective could testify to was that he field tested the substance and found it to be cocaine.[10]

■ "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). This presumption will be defeated only if an overwhelming probability that the jury cannot follow the instruction and a strong likelihood that the evidence will be devastating to the defendant exist. *Id; Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987); *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). In this case, we have no reason to believe that the jury was unable to follow the judge's instruction to disregard reference to the laboratory report. Nor do we believe that this reference to the laboratory report was devastating to the defendant. Rather, we are convinced that the judge's curative instruction to the jury immediately following this reference to the laboratory report, which was inadmissible hearsay, cured the error.

■ Second, Paiva argues that even if Detective Pike's identification was based on his personal observations, his opinion that the substance was cocaine was inadmissible because he did not qualify as an expert under Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness quali-

fied as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. A witness may qualify as an expert on any one of the five listed grounds. *Friendship Heights Associates v. Vlastimil Koubek*, 785 F.2d 1154, 1159 (4th Cir.1986). In applying Rule 702, the district court judge has broad discretion in deciding to admit or exclude expert testimony; his decision to admit such evidence will be overturned only for an abuse of discretion. *United States v. Young*, 745 F.2d 733, 760 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

Upon review, we do not find that the district court abused its discretion in admitting the testimony of Detective Pike as expert testimony. Detective Pike testified at trial that he was a Detective Sergeant with the Portland Police Department and that he had been so employed for almost 15 years. At the time of the investigation, Detective Pike testified he was working in the narcotics unit, handling drug and vice investigations. He further stated that he had encountered cocaine before. Although Paiva objected that Pike was unqualified to express an opinion as to the identity of the substance, Paiva did not challenge Pike's qualifications on cross-examination. Judging from Detective Pike's testimony regarding his experience, we conclude that the district court judge did not abuse his discretion in allowing Detective Pike to express his opinion that the substance he field tested was cocaine.

## V.

Finally, appellant-defendant Paiva contends that the evidence was insufficient to support a conviction on each Count of the Indictment. When addressing a sufficiency of evidence challenge on appeal, we view the evidence in the light most favorable to the government. *United States v. Rivera Rodriguez*, 808 F.2d 886, 889 (1st Cir.1986). Viewing the evidence in favor of the government, we will find the evidence suf-

---

**10.** See *supra* note 6.

ficient to support a conviction only if a reasonable person could fairly find the defendant guilty beyond a reasonable doubt. *Id.* The government may use circumstantial evidence to prove its case provided the total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt. *Id.* at 890; *United States v. Mehtala*, 578 F.2d 6, 10 (1st Cir.1978).

 As to Count I which charged Paiva with conspiracy to possess cocaine with the intent to distribute it, the burden rested on the government to prove that an agreement to commit an unlawful act existed between Paiva and at least one other person. *See United States v. Mora*, 598 F.2d 682, 683 (1st Cir.1979). In this case the unlawful act that Paiva must have agreed to commit was possession with intent to distribute cocaine. Count I of the Indictment named several individuals with whom Paiva allegedly conspired: "Robert R. Anderson, Mark Needelman, Carl Morrill, Joseph D. Bilodeau, and … other persons, both known and unknown to the Grand Jury."

Viewing the evidence in the light most favorable to the government, we conclude that a reasonable person could fairly find beyond a reasonable doubt that defendant Paiva agreed with another person or persons to commit an unlawful act, possession with intent to distribute cocaine. The government's proof of conspiracy involved three independent sets of witnesses. First, McGrane testified that in response to his inquiry about cocaine, Paiva brought him to Maine, introduced him to Anderson and participated in discussions regarding the cocaine partnership entered into by Anderson and McGrane. Further, Paiva thereafter served as a drug and money courier between Anderson and McGrane. Second, the government offered the testimony of both Jenkins and Morrill, who were not associated with McGrane, but independently dealt with Paiva, Bilodeau and Anderson in the distribution of cocaine. Morrill testified that he bought his cocaine from Jenkins whose source was Anderson.

Jenkins testified that he traveled to Portsmouth with Bilodeau to pick up the cocaine and the cocaine was delivered by Paiva. Third, Mark Needelman, who operated independent of McGrane, Jenkins and Morrill, testified that he originally obtained cocaine directly from Anderson, but when Anderson was arrested, he began dealing with Paiva in Anderson's absence. He made six purchases from Paiva, one in New Hampshire and five others in Massachusetts. When Paiva was incarcerated, Needelman assumed Paiva's role as Anderson's subordinate and took control of Paiva's accounts. Each week when Paiva was in jail, his share of profits, $1,000 per week, was saved for him.

Contrary to Paiva's argument, the testimony of each of these witnesses was corroborated by other evidence. Although each witness, except the Jenkins and Morrill team, dealt independently with Anderson, each witness's description of Paiva's role and method of operation regarding the distribution of cocaine corroborated the others. Moreover, telephone toll records established that Jenkins called the numbers for Paiva that Anderson had given him. Furthermore, the fruits of the search of Anderson's apartment—cocaine, money, and telephone lists and records which connected Anderson to Paiva, Needelman, and other drug traffickers—corroborated the testimony of the witnesses. Accordingly, Paiva's conviction of conspiracy as described in Count I was supported by sufficient evidence.

 Count II charged Paiva with aiding and abetting Floyd Jenkins and Joseph Bilodeau in distributing cocaine. As previously discussed, the evidence presented at trial was sufficient to sustain Paiva's conviction on Count II. Specifically, based on the testimony of Floyd Jenkins which was corroborated by items found in Anderson's apartment, a reasonable person could fairly conclude that Paiva was guilty of aiding and abetting the distribution of cocaine.

 As to the tax conspiracy charged in Count VI, we similarly conclude that the evidence was sufficient to support Paiva's conviction. To prove a conspiracy under

section 371, the government had to prove an agreement to commit an unlawful act and that the defendant committed an overt act in furtherance of the agreement. 18 U.S.C. § 371; *United States v. Tarvers*, 833 F.2d 1068, 1075 (1st Cir.1987). The government, however, did not have to prove that the defendant understood the tax consequences of his activity. *Tarvers*, 833 F.2d at 1075. Rather, "laundering" the profits of drug trafficking may amount to impeding the IRS in its ability to collect taxes. *Id.*

The evidence supported the conclusion that Paiva was involved in a drug conspiracy. The evidence further established that the members of this drug conspiracy agreed to conceal the proceeds of their illegal drug activity. The various drug dealers who bought cocaine from Anderson testified that they conducted their cocaine business in cash and never intended to report their earnings to the IRS. The tax returns of Bilodeau and Anderson revealed that they did not report any such earnings. More significantly, Paiva's tax returns showed that he had not reported his earnings from drug trafficking. For the three years in question, the evidence established that Paiva had an unreported income in excess of $125,000. The evidence further revealed that Paiva lived lavishly, spending his money on entertainment, fancy clothes and cars, six apartments rented in various names, and a condominium in Florida leased in the name of a straw corporation. Only a fraction of Paiva's assets could be attributed to legitimate earnings. From the evidence, therefore, the jury could conclude that Paiva's unreported earnings were the product of his drug activities. Accordingly, upon viewing the evidence in the light most favorable to the government, we are convinced that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Paiva conspired with other persons to conceal income from the IRS. In sum, the total evidence was sufficient to support Paiva's convictions on Count I, Count II, and Count VI of the Indictment.

## VI.

Upon review of the record, the briefs and the relevant caselaw, we affirm Paiva's convictions on Count I, Count II and Count VI of the Indictment. As to Paiva's specific allegations of error, we conclude that the district court did not abuse its discretion in denying Paiva's motion for a bill of particulars or in admitting the testimony of Christina Christo and Detective Pike. Moreover, the evidence was sufficient to sustain Paiva's three convictions. Accordingly, we affirm.