

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00087-CR

_____

TREOLA HAWKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 07F0146-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Treola Hawkins appeals from her conviction by a jury for murder. She was sentenced to thirty years' imprisonment. The evidence shows that she came home drunk and began fighting with her long-time companion. During the course of the fight, she hit him with a hammer, then with a candlestick, and ultimately cut his arm with a box cutter. The cut was deep enough to sever a major artery, and he bled to death.

Hawkins contends that the court abused its discretion by ordering that she be shackled during voir dire and during the trial, without adequate cause. She also argues that the trial court erred by allowing a police officer to testify that the wounds to the victim's arms appeared to be defensive wounds. We affirm the judgment of the trial court.

## I.      Shackling

We first address the shackling of the defendant. We addressed this constitutional protection in detail in *Ziolkowski v. State*, 223 S.W.3d 640 (Tex. App.—Texarkana 2007, pet. ref'd).[1] In *Ziolkowski*, decided April 3, 2007, we reiterated the guiding precepts and rules governing the shackling of prisoners when they are brought to court and found error, but concluded that it was harmless.

---

[1] We most recently addressed this issue in *Austin v. State*, No. 06-07-00161-CR, 2008 Tex. App. LEXIS 8630 (Tex. App.—Texarkana Nov. 18, 2008, no pet. h.) (mem. op., not designated for publication).

The underlying basis for the procedural requirements is the recognition that, when a defendant is viewed by the jury in handcuffs or shackles, his or her presumption of innocence is seriously infringed. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Only in rare circumstances is shackling called for, and in such event, the record must detail the grounds for such action. *Id.*; *Marquez v. State*, 725 S.W.2d 217, 229 (Tex. Crim. App. 1987); *Ziolkowski*, 223 S.W.3d at 642. The trial court must set forth with specificity the reasons supporting its decision to restrain the defendant. *Cooks v. State*, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992) (citing *Long*, 823 S.W.2d at 282; *Marquez*, 725 S.W.2d at 228). On appeal, the role of an appellate court is to determine whether the trial court abused its discretion in authorizing the restraint. *Long*, 823 S.W.2d at 282.

The record shows that Hawkins is a forty-one-year-old, five-foot-one-inch female, with no prior felony convictions who sought to be placed on community supervision. Defense counsel objected at length, arguing that a leg brace that the court ordered used, evidently regularly, was too large because of her small stature. Counsel pointed out that Hawkins had no prior convictions, had been in custody for nearly a year at the time of trial, and had exhibited no behavior during that entire time that could justify the use of shackles.

The trial court stated that it was aware of the brace situation and insisted that pants could be used so that the shackles would not be visible (but that, as a tactical matter, counsel had provided her with a dress for the trial—thus improperly attempting to shift responsibility for any viewing of

3

the unjustified restraints to defense counsel). The court then opined that, because of the nature of the charge,

> it is a serious enough of an issue that courtroom security must always be kept in mind, and that when I weigh the need for courtroom security as well as the steps taken to ensure that the jury won't see it, the Court is satisfied that her due process rights are being protected and would encourage Ms. Hawkins, of course, to take every step that she can to see to it that they don't see it by keeping her legs under the table.

The trial court did not make the findings required in order to justify using shackles, and there is no evidence that could support such a ruling. A mere statement that the offense is violent is not sufficient. *Long*, 823 S.W.2d at 283.

The trial court abused its discretion by shackling the defendant. This error is a constitutional one as it pertains to the defendant's presumption of innocence. Hence, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to her conviction. *See* TEX. R. APP. P. 44.2(a).

We recognize that a defendant's right not to be shackled also encompasses: (1) the courtroom's formal dignity; (2) the respectful treatment of a defendant; (3) embarrassment and distraction to the defendant; (4) the physical burden and pain of restraints; and (5) interference with a defendant's thought process. *Deck v. Missouri*, 544 U.S. 622, 626–27 (2005) (also stating that routine shackling is specifically prohibited); *United States v. Durham*, 287 F.3d 1297, 1304 (11th Cir. 2002); *Brown v. State*, 877 S.W.2d 869, 871 (Tex. App.—San Antonio 1994, no pet.).

4

In reviewing the implications of these issues in a harm analysis, the court has suggested that harm to a defendant who is restrained during trial can be shown because: (1) of prejudice felt by jurors who conclude that, because a defendant is shackled, the court has already decided that he or she is guilty, dangerous, and untrustworthy; (2) a restraint may interfere with the defendant's mental faculties and ability to communicate with counsel during trial; and (3) restraints are an affront to a court and its proceedings. *Cox v. State*, 931 S.W.2d 349, 353 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997).

When performing a harm analysis, the Texas Court of Criminal Appeals has held that the following factors are to be considered: 1) the source of the error; 2) the nature of the error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror would probably place on the error; and 5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). No single factor is dispositive. Instead, the existence and severity of these factors are indicative of the harm caused by the improper conduct. *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996).

In this case, only the first, second, and fifth factors of the harm analysis construct are implicated. The source of the error was the court itself. We have previously stated, and reiterate here, that this alone is of substantial importance. *See Ex parte Werne*, 118 S.W.3d 833, 837–38

5

(Tex. App.—Texarkana 2003, no pet.); *see also Davis v. State*, 195 S.W.3d 311, 319 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

There is no doubt that the nature of the error is constitutional—this error involves the bedrock of our jurisprudence—the concept of due process provides that no action shall be taken which will have the effect of infringing on the basic notion that a defendant is presumed to be innocent until proven guilty beyond a reasonable doubt.

However, the record does not show that jurors saw Hawkins in the leg brace, and thus no evidence would lead the jury to infer that the shackles were a comment by the trial court on her guilt, danger, or untrustworthiness. Nor is there any evidence or argument Hawkins was hampered in her ability to communicate with her trial attorney. There is no concrete indication that the leg brace was actually visible before the jury. Thus, there is no indication of an offense to the dignity and decorum of the courtroom proceedings. As a result, absent any evidence the jury actually saw the leg brace, we conclude, beyond a reasonable doubt, that Hawkins did not suffer harm.[2]

The final factor is whether we should reverse this case to assure this error will not be repeated. Our judicial system rests on our trial courts' timely and correct application of the law; not merely the correction of errors by superior courts. Since this is not the first time this issue has been

---

[2]We again point out to the trial bench that this is a risky practice. If there is evidence that a jury saw the restraints, it very well might cause the jurors to conclude the defendant was dangerous and guilty, which in all likelihood would require a reversal of the conviction, unless the situation involved the "rare" case where a necessity for restraint existed and the trial court specified such reasons in the record.

raised from the same trial court, we had concern that this practice had become a routine in that court. It is now represented to us that the procedures in that court have been formally changed in order to comply with the constitutional requirements on this issue. With that assurance, we find it is unnecessary to reverse this case on the basis that an affirmance would lead to a repetition of the error. We find the error in this instance to be harmless.

We overrule the contention of error.

## II.     Improper Expert Testimony

Hawkins next contends that the trial court erred by allowing police officer Mark Sillivan to testify over objection that wounds on the arms of the victim were consistent with him raising his arms in a defensive manner. Sillivan had been qualified as an expert in the area of crime scene investigation. On the night of the murder, Sillivan observed and made photographs of the wounds found on the victim's body.

On appeal, Hawkins argues that the testimony was speculative and outside the scope of Sillivan's expertise pursuant to Rule 702 of the Texas Rules of Evidence. *See* TEX. R. EVID. 702. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); *Darling v. State*, No. 06-06-00150-CR, 2008 WL 3367553, at *3 (Tex. App.—Texarkana Aug. 13, 2008, pet. filed).

In this case, Sillivan was properly qualified as a forensic and fingerprint expert in reviewing crime scenes. Although the State suggests that his qualifications are sufficient to justify his

testimony regarding the physical aspects of injuries sustained during the course of a crime, our review of his qualifications does not reveal special credentials to speak as an expert about wound patterns. But in proper instances, lay witnesses may express opinion testimony. Tex. R. Evid. 701.

Lay witnesses may testify to their opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. *Id*.

A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. However, as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training. Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. *United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989). It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).

8

Here, the evidence established that Sillivan was a trained investigator of crime scenes. His training included latent fingerprint examination, forensic aspects of death investigation, sketching, and the handling of evidence. He further testified that he has observed other instances of defensive wounds during his career. His testimony was that the wounds on the victim were consistent with other defensive wounds he had observed. We find this observation did not require significant expertise to interpret, did not rely on a scientific theory, and was admissible under Rule 701 as lay opinion testimony even though Sillivan had some technical training. *See id.* Courts have admitted a variety of opinion evidence from peace officers and lay persons when the evidence meets the requirements of Rule 701. *See Hollis v. State*, 219 S.W.3d 446 (Tex. App.—Austin 2007, no pet.) (testimony of peace officer that defendant had blisters and discolorations on his hands indicating methampethamine exposure); *Williams v. State*, 191 S.W.3d 242 (Tex. App.—Austin 2006, no pet.) (officer with some training allowed to give lay opinion that defendant did not exhibit signs of one with mental health issue); *In re J.C.*, 892 S.W.2d 87 (Tex. App.—El Paso 1995, no pet.) (testimony of lay person that bruises appeared to be one day old admissible since witness had recent personal experience with bruising). The trial court did not abuse its discretion in allowing this testimony.

Even if this evidence had been inadmissible, it did not constitute reversible error. In our review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights of the accused. TEX. R. APP. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's

9

verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see* TEX. R. APP. P. 44.2(b). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must conclude that the error was not harmful and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Those wounds had previously been discussed in detail by the pathologist who had performed the autopsy of the victim's body. She testified to the existence of two very small and very superficial lacerations on the victim's left forearm. In response to questions propounded by the State, she testified that the wounds could be considered defensive based on their location, but one could not be sure.

Thus, we have a qualified expert testifying that the lacerations were in the proper location, and might have been defensive wounds, and a police officer testifying similarly that they were consistent with defensive wounds.

Under this state of the record, we do not find that the admission of testimony by the officer that was very similar to the pathologist's testimony was such as would affect a "substantial right" of the defendant, i.e., one that had a substantial and injurious effect or influence on the jury when reaching its verdict. *See King*, 953 S.W.2d at 271; *see also* TEX. R. APP. P. 44.2(b).

We affirm the judgment.

                                        Jack Carter
                                        Justice

Date Submitted:     December 23, 2008
Date Decided:       January 7, 2009

Do Not Publish