# United States Court of Appeals
## For the First Circuit

No. 99-1394

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. VEGA-FIGUEROA, A.K.A. PITO CASCO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

Bruce R. Bryan and Paul G. Carey on brief for appellant.

Jacabed Rodriguez-Coss, Assistant United States Attorney, Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney on brief for appellee.

December 18, 2000

**BOWNES, <u>Senior Circuit Judge</u>.** Defendant-appellant José A. Vega-Figueroa, along with eight other defendants, was tried pursuant to a three-count indictment in the District Court for the District of Puerto Rico for drug related activities. The indictment charged as follows: Count I, 21 U.S.C. § 848(a) and (b), continuing criminal enterprise, and 18 U.S.C. § 2, aiding and abetting; Count II, 21 U.S.C. § 846, conspiracy to distribute in excess of five kilograms of heroin, in excess of five kilograms of cocaine, in excess of five kilograms of cocaine base and in excess of 100 kilograms of marijuana; and Count III, 18 U.S.C. § 924(c)(1) & (2), unlawful use of firearms during and in relation to a drug trafficking offense and aiding and abetting.

All nine of the defendants who stood trial were found guilty on all or some of the counts. We consolidated the appeals. Seven of the defendants argued orally on September 14, 2000. The other two defendants' appeals were submitted on briefs to the same panel.

The defendant in this case, Vega-Figueroa, was found guilty on all three counts. He was sentenced to life imprisonment on Counts I and II of the indictment[1] and a term of five years on Count III, to be served consecutively. Defendant

---

[1]Count II was subsequently dismissed.

-3-

has raised ten issues on appeal, which we will discuss in the order followed in his brief.

## I.  **FACTS**

We state the facts in the light most favorable to the verdict.  See United States v. Duclos, 214 F.3d 27, 32 (1st Cir. 2000).  This rehearsal of the evidence does not, of course, cover the facts that are applicable only to other defendants. Nor do we recite, at this juncture, all of the facts involving defendant.  Many of the facts pertaining to particular issues will be set forth in our discussion of the issues.  All we do now is state those facts that will give the reader the necessary background information to understand the different issues raised by defendant.  Defendant and Carlos Hernandez-Vega were in charge of an extensive criminal enterprise involving the sale and distribution of heroin, cocaine, crack cocaine, and marijuana.  Cooperating witnesses for the government included five former members of the enterprise who sold narcotics for the organization.  Their testimony can be summarized as follows.

Defendant and/or Hernandez-Vega delivered the drugs to the various cooperating witnesses at the drug point, located in a public housing project.  Members of the enterprise carjacked automobiles on a regular basis.  The carjacked vehicles were then used for drive-by shootings targeted against other drug dealers who operated drug points in other public housing units in competition with defendant and Hernandez-Vega.  The drug

distribution point of the enterprise was guarded by armed members of the organization. There was also testimony that defendant and Hernandez-Vega operated a heroin drug point located within the Hogar Crea detention and drug rehabilitation facility in Saint Just at Trujuillo Alto, Puerto Rico. Another drug gang ousted two members of defendant's organization from the Hogar Crea drug point. Defendant and Hernandez-Vega ordered that the two men who had taken over the Hogar Crea drug point be murdered. The men were ambushed and killed by defendant, Hernandez-Vega, and other members of defendant's enterprise.

The indictment charged that the continuing criminal enterprise and conspiracy started on or about August 1, 1990, and continued until on or about April 10, 1997.

## II. DISCUSSION

The issues are essentially stated as phrased by defendant.

1. **Whether a statement made by defendant while in custody should have been suppressed.**

After being arrested, defendant, along with other codefendants, was taken into custody to be interrogated, photographed, and finger-printed. Before any police interrogation started, another arrestee, Medina-Sanchez, asked defendant if he had been arrested for running a criminal

enterprise and supervising a drug point. Defendant replied "that was before . . . about the drug point . . . now I only supervise the kitchen. . . ." In the parlance of the drug trade a "kitchen" is that part of a drug operation in which the drugs are prepared for sale. Unfortunately for defendant, two federal agents overheard the conversation and included it in their report. The statement was used against defendant at trial. Defendant contends "that the statement should have been suppressed because (1) he should have been warned of his constitutional rights under Miranda and (2) the statement was not voluntarily made."

In denying defendant's motion to suppress, the district court examined the totality of the circumstances and found:

> [I]t is clear that the statements which defendant made while waiting to be booked at the Federal Building were indeed voluntary. Defendant merely responded to questioning from another arrestee. Although he was being closely supervised by various agents who were present to ensure that things were under control, those agents did not address him directly, except to allegedly ask him routine questions, such as his name, nickname, prior employment, and whether he had any addiction problems.

Our prior case law establishes the standard of review. We held in United States v. Taylor, 985 F.2d 3, 7 n.5 (1st Cir. 1993), that "[n]ormally, 'clear error' is the standard employed in reviewing findings of fact. In the present case, however,

-7-

none of the relevant facts are in dispute . . . . Thus, the determination as to whether police 'interrogation' occurred depends on the totality of the circumstances, a balancing analysis commonly considered amenable to plenary review" (citations omitted). We held in United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994), that "[i]n scrutinizing a district court's denial of a suppression motion, the court of appeals will review findings of fact for clear error, while at the same time subjecting the trial court's ultimate constitutional conclusions to plenary oversight."

Neither party here disputes the circumstances surrounding defendant's statement. The only questions presented for review are whether the district court erred in holding that defendant's statements were voluntary and that the custodial situation did not amount to the functional equivalent of an interrogation. Because these issues involve questions of law, we apply plenary review.

First, we reject defendant's argument that he was entitled to Miranda warnings. In order for Miranda rights to be invoked, there must be (1) custody and (2) interrogation. See United States v. Ventura, 85 F.3d 708, 709-10 (1st Cir. 1996). It is undisputed that defendant was in custody at the time of his statement. Because he does not allege that there was ever

-8-

an actual interrogation, the crux of his appeal hinges on whether the environment within which defendant made the statement amounted to the functional equivalent of an interrogation.

The Supreme Court discussed the concept of the functional equivalent of an interrogation in Rhode Island v. Innis, 446 U.S. 291 (1980), holding:

> . . . Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect . . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

Id. at 300-01 (citations omitted).

Here, defendant alleges only that the police performed their routine activities of fingerprinting and photographing him and other defendants. He points to no words or actions on the part of the federal agents that were likely to elicit his

-9-

incriminating words about "supervising the kitchen." Hence, there is nothing to support his contention that he experienced the functional equivalent of interrogation such that Miranda warnings were warranted.

Nor did the district court err in holding that defendant's statements were voluntary. The Supreme Court has held that "[t]he admissibility of the respondent's statement as a constitutional matter [is] governed . . . by the contemporary case law elaborating the due process standard of voluntariness. The question [is] whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances." Procunier v. Atchley, 400 U.S. 446, 453 (1971); see also United States v. Melendez, 228 F.3d 19, 22 (1st Cir. 2000) (holding that Miranda has no force outside of interrogations where interrogators do not have the "capacity to dominate the scene to such an extent that the risks of coercion and intimidation are unreasonably high").

Applying the applicable case law to the undisputed facts of the circumstances surrounding defendant's statement, we have no difficulty finding that the statement was his free and voluntary act. Defendant's statement was not the result of intimidation, coercion resulting from the setting in which the

statement was made, or a deliberate plan by the agents to place defendant in an environment that would induce a confession.

> **2.     Whether defendant was denied a fair trial by the failure of the government to disclose information in its possession.**

Defendant asserts that the government was untimely in its disclosure of two pieces of evidence - rough notes taken by F.B.I. agents for use in preparing a report, and photographs used to question a key witness - and that he was therefore impaired in his ability to defend.  The district court permitted the introduction of both of these pieces of evidence.

Defendant presents extensive case law discussing the government's obligation, under Fed. R. Crim. P. 16(c), to disclose documents "which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial. . .."  He does not specify, however, how his ability to defend the case was impaired, or how he would have altered his defense had the allegedly untimely information been disclosed earlier.

As to the notes, defendant seems to argue that he hoped that by viewing copies of the notes used in writing the F.B.I. report, he would be able to show inconsistencies between the agents' testimony and the report.  The district court was

-11-

unconvinced that defendant even needed to survey the notes at all, noting that defendant had access to the actual report, as well as an opportunity to cross-examine the agents who had prepared the report, during which defendant could have attempted to unearth all of the same alleged inconsistencies that he hoped to bring to light in viewing the notes.

As to the photographs, defendant contends that his defense was impaired by the government's failure to timely disclose the photos. The district court allowed the photos to be used at trial even though they had not previously been disclosed to defendant, on the ground that the photos were used exclusively for identification purposes. The photos were presented to a witness whose description of a third party had been called into question by the defense, in order to verify that he was able to identify the correct person. Implicit in the district court's decision is a finding that because the photos were only used to clarify an identification, an identification that defendant was well aware would take place, the delayed disclosure did not impair defendant's case.

We held in United States v. Devin, 918 F.2d 280 (1st Cir. 1990):

> When the issue is one of delayed disclosure
> rather than total nondisclosure . . . the
> applicable test is whether defense counsel
> was prevented by the delay from using the

> disclosed material effectively in preparing and presenting the defendant's case . . . . Although our opinions have not been explicit on the point, we believe that, absent a mistake of law, a court of appeals should review a district court's finding that delayed disclosure was harmless . . . under an abuse-of-discretion standard.

Id. at 289 (citations and internal quotations omitted). "Generally, [the court has] viewed the failure to ask for a continuance as an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously." United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1991). We also held that "[a defendant's] claim that he was unfairly surprised is severely undermined, if not entirely undone, by his neglect to ask the district court for a continuance to meet the claimed exigency." United States v. Diaz-Villafane, 874 F.2d 43, 47 (1st Cir. 1989).

Here, defendant never moved for a continuance as a result of the allegedly delayed disclosure. In light of this failure, combined with his failure to substantiate his assertion of impairment in defending his case with even a single concrete example, we cannot say that the district court abused its discretion in allowing the evidence in question to be admitted.

### 3. **Whether defendant was denied due process by the interference of the government with a key defense witness.**

-13-

The essential facts are as follows. Defendant intended to call as a defense witness Isabelle Cesareo, the aunt of Ramon Cesareo, a prosecution witness who had made an agreement with the federal government in exchange for his testimony. Isabelle was to testify adversely on the credibility of her nephew. The prosecution sent three F.B.I. agents to Isabelle's home to speak with her. She was not home at the time, and the agents were only able to speak with her daughter. The daughter testified that the agents questioned her about whether defense counsel had been in contact with her mother; told her that unless served with a subpoena, her mother was under no obligation to testify; and said that her mother's testimony could adversely affect Ramon's agreement with the government. Isabelle, though seemingly reluctant to testify after the visit, ultimately did so.

The district court asked the prosecutor why F.B.I. agents had been sent to the home of a defense witness. She responded that the visit followed a report that the defense had been in contact with a witness. Ramon told the F.B.I. that, in an attempt to keep him from testifying, defense counsel had visited members of his family and told them that he, Ramon, would be the only government witness to take the stand against defendant at trial. The prosecutor claimed that the visit to

-14-

Isabelle's home was simply an attempt to corroborate Ramon's statement.

The district court was presented with three issues: (1) the reason that the prosecution sent agents to the witness's home; (2) whether the visit was improper; and (3) whether the visit affected the testimony given by the witness. The district court held:

> [W]e do find after hearing Mrs. Cesareo and her daughter that this witness is not hostile to the defendant. She is willing to testified [sic]. Her testimony in court this morning was frank, honest and the Court has no reason to be concerned about it, as far as what the defendant wishes her to testify about . . . . [W]e do find that in substance the visit by these agents, although, in the Court's opinion not the best practice without notifying counsel . . . we do find that it has not in any way affected the right of the defendant to bring this witness via a subpoena to have her testify candidly like she is prepared to do and the Court corroborated that this morning and, therefore, the defendant's rights have not been affected in any way. Mrs. Cesareo is here in court. She will be a witness.

Defendant asserts that the prosecution sent the agents to Isabelle's home in order to encourage her not to testify, and that, even though she ultimately did testify, she had been "changed from a willing participant in the court proceeding to a highly reluctant and scared participant." This interference, defendant argues, constitutes a denial of due process.

-15-

Defendant does not specify what parts of Isabelle's testimony would have been different had the prosecution not contacted her. The government points out that the agents never actually spoke with Isabelle or entered into a discussion as to whether she should testify. Finally, the government argues that, even were the prosecutor's visit found to have been improper, the defendant was not prejudiced since, in the end, Isabelle did take the stand.

If any improprieties surrounding the prosecution's contact with the witness are found, we must determine whether that interference constituted reversible error. See Lisenba v. California, 314 U.S. 219, 236 (1941) (holding that "[a]s applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."); see also United States v. Olano, 507 U.S. 725, 733 (1993) (holding that an appeals court's authority to reverse a district court decision is contingent upon the error being prejudicial). Regardless of whether actual prejudice is required, defendant has failed to prove a due process violation.

We take a dim view of government agents gratuitously confronting a defense witness out of court before the witness testifies. See Kines v. Butterworth, 669 F.2d 6, 9 (1st Cir. 1981) (holding that "when the free choice of a potential witness to talk to defense counsel is constrained by the prosecution without justification, this constitutes improper interference with a defendant's right of access to the witness. Justification on the part of the prosecution to interfere with that right can be shown only by the clearest and most compelling considerations."). In the present case, however, there is nothing in the record indicating that the testimony would have been different or more exonerating if the agents had not talked to the witness's daughter. We are, therefore, bound to uphold the district court's ruling.

### 4. Whether the government proved a continuing conspiracy or only multiple conspiracies.

Part of the conspiracy for which defendant was convicted involved the operation of a drug point after 1995. Defendant was incarcerated from January, 1995, through April, 1997, and denies having participated in any conspiracy during that time. He argues that the evidence was insufficient to prove the existence of only a single conspiracy and that he thus should not be held liable for any of the transactions that took

place after the start of his incarceration.  Defendant further asserts that, because there is no evidence connecting him with any conspiracy after the start of his incarceration, no evidence having to do with the operation of the drug point subsequent to his incarceration should have been admitted.  In support of this contention, he points to evidence suggesting that, while he was in jail, the drug point in question came to be controlled by another organization of which he was not a member, and that certain members of his conspiracy were also members of another conspiracy.  This, he argues, shows the existence of multiple conspiracies rather than just a single conspiracy.  If, as defendant contends, multiple conspiracies existed, the criminal activities for which he could be held responsible would be greatly reduced.

Whether a series of events constitutes a single conspiracy is a question of fact, reviewed for sufficiency of evidence.  We held in <u>United States</u> v. <u>Bello-Perez</u>, 977 F.2d 664, 667 (1st Cir. 1996), that "[w]hether the evidence adduced at trial established one or more conspiracies [is] a question of fact for the jury."  "It is a recurring question in conspiracy cases whether related illegal agreements comprise one conspiracy or several.  Because the agreements are often not explicit and are regularly inferred from conduct, the courts ordinarily treat

the issue as one of fact and offer various criteria that might help the factfinder distinguish . . . ." <u>United States</u> v. <u>Randazzo</u>, 80 F.3d 623, 629 (1st Cir. 1992). "[A] single conspiracy may exist where there has been no direct contact among some of the participants . . . . Moreover, [t]he fact that every defendant did not participate in every transaction necessary to fulfill the aim of their agreement does not transform a continuing plan into multiple conspiracies." <u>United States</u> v. <u>Mena-Robles</u>, 4 F.3d 1026, 1033 (1st Cir. 1993) (citations and internal quotation marks omitted). In reviewing a jury's finding concerning the number of conspiracies, "where . . . there is no challenge to the jury instructions, we review the jury's conclusion as to whether one or more conspiracies existed only for evidentiary sufficiency." <u>Id.</u>

The evidence suggesting multiple conspiracies to which defendant refers in his appeal is only tangentially related to the issue presented to this court: whether there is sufficient evidence in the record upon which a reasonable jury could have found that the conspiracy to distribute drugs continued after defendant was incarcerated. That there may be some evidence suggesting the existence of multiple conspiracies does not change the fact that this court cannot reverse the jury's verdict (which rested upon a finding of a single conspiracy)

-19-

absent a determination that no reasonable jury could have come to this conclusion.

The record is replete with evidence allowing for a finding of a single conspiracy that continued beyond the start of defendant's incarceration. During the three months of trial, witness after witness provided testimony demonstrating the impeccable organization of the conspiracy – everything from the color of the packaging used for the drugs, to the preferred car models stolen for use in drive-by shootings, to the particular kinds of firearms members were permitted to carry in various situations – all of which was under defendant's control. There was even a reference made to a designation of which specific members of the conspiracy would be allowed to make decisions at a meeting that took place during a period in which defendant was briefly incarcerated. Based on all of this testimony demonstrating the rock-solid, intricately designed organizational structure of the conspiracy, there is no basis to find that the jury was unreasonable in coming to the conclusion that the conspiracy continued after defendant was imprisoned and that he continued to play a major role in its operation.

5. **Whether the proof at trial varied from the indictment.**

Defendant claims to have had inadequate notice of the conduct for which he was charged. He argues that the

prosecution, without indicating in the indictment that it was going to do so, introduced evidence that, as part of the conspiracy, he (1) was involved in the murder of Maria Magdalena Gotay, the sister of one of the prosecution's key witnesses; and (2) supervised the drug point at the housing project while he was incarcerated. Defendant asserts that these unforeseen accusations represent a variance between the indictment and the proof adduced at trial. The prosecution asserts that it is not required to prove the commission of any overt act in furtherance of a 21 U.S.C. § 846 drug conspiracy and that therefore it was not required to list any overt acts in the indictment.

Defendant raised a nearly identical argument before the district court in a motion to suppress. The district court denied the motion, rejecting defendant's claims of unconstitutional variance and insufficient notice. With respect to the variance assertion, the district court held that "what defendants fail to recognize is that the indictment charged defendants with conspiracy, not murder. The use of this testimony regarding the murder is merely another overt act in furtherance of the conspiracy, and not an additional charge for the murder itself." The district court then rejected the insufficient notice claim, pointing out that "the Government was not even required to supply the defendants with the name of the

-21-

witness who [would] testify about this murder prior to the trial."  In his appeal to this court, defendant reasserts the argument he made to the district court.

21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  In <u>United States</u> v. <u>Shabani</u>, 513 U.S. 10, 13 (1994), the Supreme Court stated that "[t]he language of neither [the original conspiracy statute of the Comprehensive Drug Act of 1970 nor the version amended by the Anti-Drug Act of 1988] requires that an overt act be committed to further the conspiracy, and we have not inferred such a requirement from congressional silence in other conspiracy statutes."  We held in <u>Bello-Perez</u>, 977 F.2d at 669, that "[t]he government is not required to plead or prove any overt act in furtherance of a section 846 conspiracy. <u>Although overt acts are gratuitously set forth in the indictment, the government is not limited at trial to proof of the alleged overt acts; nor is the indictment rendered insufficient for failure to plead other overt acts</u>." (citations and internal quotation marks omitted) (emphasis added).

Under the applicable case law, it is clear that defendant has no basis for asserting that there was a fatal variance between the indictment and the proof at trial.

**6.    The government made promises of value to witnesses for their testimony in violation of 18 U.S.C. § 201(c)(2) (2000).**

18 U.S.C. § 201(c)(2) (2000) provides that "[w]hoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . shall be fined under this title or imprisoned for not more than two years, or both."  Defendant contends that the government violated this statute by agreeing, in return for the witnesses' testimony, not to prosecute one witness, and to support a reduction in a sentence for another.  We heard and unequivocally rejected this argument in <u>United States</u> v. <u>Lara</u>, 181 F.3d 183, 197-98 (1st Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 432 (1999):

> [W]e make our position explicit and unqualified.  There are several reasons why section 201(c)(2) cannot be invoked as a bright-line barrier to the government's use of witnesses whose cooperation has been secured by agreements not to prosecute or by promises of recommended leniency.  The most basic reason is that <u>section 201(c)(2) does</u>

-23-

> not apply at all to the federal sovereign
> qua prosecutor. After all, statutes of
> general purport do not apply to the United
> States unless Congress makes the application
> clear and indisputable, and Congress has
> taken no such steps in respect to this
> statute. Reliance on this tenet is
> particularly apt where, as here, the failure
> to honor it would divest the government of a
> long-established prerogative and, in the
> bargain, lead to an eccentric result.

(citations and internal quotation marks omitted) (emphasis added). Under this holding, defendant's assertion is meritless.

### 7. Whether defendant was denied a fair trial because a witness was permitted to give an opinion on an ultimate issue in the case.

Fed. R. Evid. 701, Opinion Testimony by Lay Witnesses, provides:

> If the witness is not testifying as an
> expert, the witness's testimony in the form
> of opinions or inferences is limited to
> those opinions or inferences which are
> (a) rationally based on the perception of
> the witness and (b) helpful to a clear
> understanding of the witness' testimony or
> the determination of a fact in issue.

Defendant asserts that the district court should not have permitted testimony by Aleida Gotay Saez in which Gotay stated her opinion that the reason her sister was killed was that Gotay's drug point, where her sister worked, sold more drugs than the drug point operated by defendant and his co-

-24-

conspirators.  Defendant argues that this testimony was based on hearsay, that it was an opinion concerning an ultimate issue that had to be determined by the jury, that it was not "helpful" as required by section (b) of the rule, and that it seriously prejudiced his case.

The government argues that because of Gotay's heavy involvement with the competing drug point at the housing project, her participation in a meeting in which defendant mentioned the benefits of joining his operation, her first-hand knowledge of how drug trafficking organizations operated, and her witnessing of her sister's murder, she was in a position to give an opinion as to why her sister was killed.  The government contends that her testimony was helpful because it helped the jury understand the motive behind the murder and how the act furthered the interests of the conspiracy.

In United States v. Paiva, 892 F.2d 148, 156 (1st Cir. 1989), we reiterated the generally accepted rule:

> The admissibility of lay opinion testimony pursuant to Rule 701 is committed to the sound discretion of the trial judge, and the trial judge's admission of such testimony will not be overturned unless it constitutes a clear abuse of discretion.

We pointed out that "[t]he modern trend favors the admission of opinion testimony provided it is well founded on personal knowledge and susceptible to cross-examination."  Id. at 157;

see also United States v. Rivera-Santiago, 107 F.3d 960, 968 (1st Cir. 1997); United States v. Jackman, 48 F.3d 1, 4 (1st Cir. 1995).

The record shows that Gotay was subject to intensive cross-examination. Under the applicable law and the facts to which she testified, we find that the district court did not abuse its discretion in allowing Gotay to state her opinion as to why her sister was killed. In all events, given the strength of the government's case against defendant, any error in the admission of this evidence was harmless.

8.      **Whether the search warrant for defendant's apartment was invalid because it failed to correctly identify the apartment to be searched.**

Defendant moved to suppress the evidence seized on the ground that an erroneous address on the warrant invalidated it. He further argued that even if the warrant was valid, it should not have issued because it was not supported by probable cause. The district court did reach the merits of the motion to suppress but dismissed it on the ground that it was untimely. Although we do not entirely disagree with the district court as to the timeliness of the motion, we prefer to decide the issue on the merits.

We held in United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999), that "[w]e review the question of probable cause de novo, assessing the information provided in the four corners of the affidavit supporting the warrant application" and that "probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed . . . ." (internal quotation marks and citations omitted).  Probable cause, in the context of granting a search warrant, requires no more than the existence of a "fair probability" that evidence of a crime will be found.  United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000).

The facts leading to the warrant are as follows.  Edwin Nunez Cotto, an officer in the drugs and narcotics division of the Puerto Rico Police Department, testified that while conducting surveillance of the building in which defendant lived, he had seen individuals who appeared to be transporting weapons and other individuals positioned on the roof, apparently as lookouts.  These observations led Nunez to conclude that "they were protecting something in defendant's apartment."

Defendant argues in his brief that the warrant was not supported by probable cause.  He states:  "Where information is supplied by a confidential informant to a police officer, the

informant, in general, must be shown to have an adequate basis of knowledge and a background demonstrating reliability." This is a substantially correct statement of the law but there is nothing in the record about information from a confidential informant. Rather, it seems clear that the warrant was issued based on the observations and conclusion of Officer Nunez. There can be little doubt that there was at least a "fair probability," based on Nunez's observations, that evidence of a crime could be found. We rule that there was probable cause for issuing the search warrant.

Defendant's final argument on this issue focuses on an incorrect address given in the warrant. The warrant mistakenly described the apartment to be searched as building 44, apartment 446. Defendant's address was in fact building 45, apartment 446, and that was the only premises searched. Officer Nunez, who made the observations that were the basis for issuing the warrant and was its executing officer, was also a member of the search team. He correctly directed the team to defendant's apartment.

Defendant argues that, because of the address mistake, his apartment was not "particularly described" in the warrant as required by the Fourth Amendment. He contends that the search of his apartment was thus improper, and that any evidence found

as a result of the search should be suppressed.  Defendant asserts that the warrant allowed the police to undertake wide-ranging general searches in violation of the Fourth Amendment, and that there was a great probability that the wrong apartment would be searched.

We held in United States v. Bonner, 808 F.2d 864, 866-67 (1st Cir. 1986), that "[t]he manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police" and that "[t]he test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." (internal quotation marks and citations omitted). The warrant in Bonner was held to be valid despite its omission of the house number, because it included an adequate description of the premises to be searched and because, as in the present case, an agent who had been involved with surveillance of the house had accompanied the search team.  The incorrect address did not invalidate the warrant where "[t]here was no risk that federal agents would be confused and stumble into the wrong

house, or would take advantage of their unforeseeable windfall and search houses indiscriminately, . . . ." Id. at 866.

We rule that the warrant was properly issued and executed.

**9.     Whether the district court omitted key instructions from the instruction on a continuing criminal enterprise.**

Defendant asserts that the district court's charge to the jury was deficient in that it failed to (1) define the meaning of the terms "organizer," "supervisor" and "manager," (2) instruct the jury on what was meant by acting "in concert or together with" five or more other persons," (3) instruct as to which individuals were countable in the "five or more other persons," and (4) sufficiently communicate the need of the jury to unanimously identify each underlying violation. He argues in the alternative that the failure to object on this issue constituted ineffective assistance of counsel.

Because defendant did not raise any of these objections after the charge and before the jury started deliberations, we review the district court's instructions for plain error. In United States v. Olano, 507 U.S. 725, 732 (1993), the Supreme Court defined this standard of review as requiring "an 'error' that is 'plain' and that 'affect[s] substantial rights.' . . .

-30-

Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

The prosecution argues that a district court has no obligation to define terms generally understood by the average person and that therefore defendant's first two claims are meritless.  We agree with the government's argument in this regard.  See United States v. De LaCruz, 902 F.2d 121, 123 (1st Cir. 1990).  Regarding the third claim, the prosecution notes that there were nine defendants at trial (the tenth having pled guilty) and that it thus went without saying who could be counted.  As to the final claim, the prosecution asserts that the district court was clear in indicating that the jury had to unanimously agree on which three violations constituted the series of three or more violations.

The district court's charge to the jury on Count 1 of the indictment, the continuing criminal enterprise charge, was as follows:

> In Count 1 of the indictment two of the defendants are charged, Jose Vega Figueroa and Carlos Hernandez Vega.  The law makes it a federal crime or offense for anyone to engage in what is called a

continuing criminal enterprise involving controlled substances.

A defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First, that the defendants violated Section 841(a)(1) as charged in the indictment. This is the drug trafficking case.

Second, that such violations were part of a continuing series of violations as herein after defined.

Third, that such continuing series of violations were undertaken by the defendants in concert or together with at least five or more other persons.

Fourth, that the defendant occupied the position of an organizer, supervisor or manager.

Fifth, that the defendant obtained substantial income or resources in the continuing series of violations.

A continuing series of violations means proof of at least three violations under the Federal controlled substances law, as charged in Count 1 of the indictment, and also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts. <u>You must unanimously agree on which three violations constitute the series of three or more violations in order to find the essential element of No. 2 of this offense has been proven</u>.

It must also be proved that the defendants engaged in the continuing series of violations with at least five or more

-32-

persons, whether or not those persons are named in the indictment and whether or not the same five or more persons participated in each of the violations, or participated at different times.  And, it must be proved that the defendant's relationship with the other five or more persons was that of organizers, supervisors or managers – that the defendant's relationship with the other five or more persons was that of organizer, supervisor or manager, and that the defendant was more than a fellow worker and either organized or directed the activities of the others, whether the defendant was the only organizer or supervisor or not.

Finally, it must be proved that the defendant obtained substantial income or resources from the continuing series of violations.

(emphasis added).

Given the language of the charge, we cannot conclude that  the instructions on this issue were defective, much less plainly erroneous.

Defendant's alternative claim – that the failure to object on this issue constitutes ineffective assistance of counsel – depends on whether we find any merit in his argument that the jury instructions were flawed.  Because we find that the jury instructions were not flawed, we do not discuss defendant's alternate claim of ineffective assistance of counsel.

**10.** **Whether the jury engaged in improper deliberations prior to the closing of the case.**

-33-

During the trial, the jury requested to see the scene of the two murders at Hogar Crea, a drug detention and rehabilitation facility where members of the conspiracy had set up a second drug point. In response, the district court instructed the jury to wait until the government had presented its case-in-chief and that if, at that time, it still wished to see the scene, it should renew its request at that time. Defendant asserts that this request demonstrates that the jury had been deliberating and weighing the evidence before all of the evidence had been presented, and that the court erred in failing to remind the jury that it was not within its province to determine what evidence it should consider. Because defendant did not raise this objection during trial, we review the district court's failure to so instruct for plain error. See Olano, 507 U.S. at 732.

The record shows the jury was instructed at the beginning of the trial that they should not discuss the case until instructed to do so, and that the court concluded every session by warning the jury: "Do not discuss the case with anyone," or "Do not discuss it among yourselves or with anyone." We do not think that the desire of the jury to view a drug point is any indication that it disregarded the court's repeated and explicit instructions and engaged in improper deliberations.

-34-

For the foregoing reasons, the judgment below is **affirmed.**