STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CR-03-356



State of Maine

v.

Order (Motion to Suppress)

Walter S. Cobb II

DONALD L. (       :CHT
LAW L

OCT 2 1 2003

Pending before the court is the defendant's motion to suppress. Hearing on the motion was held on September 4, 2003. The defendant was present with counsel. In his motion, the defendant contends that evidence obtained pursuant to a search warrant should be suppressed because the street address of the searched premises was different than the street address specified in the warrant.[1]

On March 11, 2003, Maine State Police Trooper Millet applied for a warrant to search "Walter Cobb's and wife/girlfriend of unknown name's apartment, at 28 Mill St., Sangerville."[2] Finding probable cause to justify the search, a District Court judge issued the warrant. The warrant reiterates the language noted above and included additional information, also found in the application, identifying the location to be searched. Those provisions included a description of the building, the location of the defendant's apartment within the building and descriptions of the defendant's two vehicles "at the residence, or where it [sic, apparently meaning the vehicles] is found. . . ." In the warrant

---

[1] In his motion, the defendant also challenged the sufficiency of the contents of the warrant application to support a finding of probable cause. After the evidence had been presented at the suppression hearing, however, the defendant withdrew this argument.

[2] In fact, Millet obtained two warrants. The first warrant authorized a daytime search. *See* state's exhibit 1. After the first warrant was issued, Millet and others who were to execute the search decided to seek a no-knock warrant. With the consent of the District Court judge who issued the first warrant, the officers presented a second application to a different judge, who issued a warrant that authorized the officers to conduct the search at any time without a knock requirement. *See* state's exhibit 2. This aspect of the warrant and the resulting search is not in issue here.

1

application, Millet stated under oath that on March 9 he had interviewed a person who claimed to be the victim of a robbery perpetrated by three men. The victim identified one of the men as Albert Severance, whom he knew. He provided a physical description of the other two subjects, whom he did not know. An affidavit included with the search warrant application set out a physical description of the defendant, which bore some similarities to one of those two descriptions provided by the victim. The next day, Millet spoke with Severance, who denied any involvement in the robbery. Severance told Millet that he lived in an apartment in a building located at 28 Mill Street in Sangerville and that the defendant lives in a separate apartment in the same building. After concluding the interview, Millet gave Severance a ride to Severance's Mill Street residence. While they were there, Severance pointed out the defendant's girlfriend, who apparently was visible in an upstairs apartment. On the same day when Millet spoke with Severance, he also interviewed another person who disclosed that a day or two prior to the robbery, he had overheard Severance and the defendant make plans to steal money from a person who has the same first name as the robbery victim and who lives in the same town as the victim.

After obtaining the search warrant, Millet, Trooper Grant and perhaps others went to the location that they believed was the one identified in the warrant. It was the same location where Millet had gone the previous evening with Severance. On either that or another occasion prior to the date they executed the warrant, Grant had also been present at that building and knew that Severance lived there.

In fact, the building where the officers executed the warrant was 26 (rather than 28) Mill Street. Millet testified that he does not recall when he learned of the correct street address, and Grant testified that the building "turned out" to be number 26. The court infers from this that the officers were not aware of the discrepancy until after they had executed the warrant. The record does not reveal whether there is a 28 Mill Street. The building where the search was conducted matched the physical description set out in the application and in the warrant itself. Additionally, the vehicles that, according to the application, were associated with the defendant were present at the building containing the apartment that was searched. However, the houses located on Mill Street have a similar appearance and are close to each other.

2

On the basis of this record, the defendant contends that because the search was conducted in a building that has a street number different than the street number set out in the warrant itself, the search was illegal, and the evidence obtained during that search must be suppressed.

This case is indistinguishable from *United States v. Vega-Figueroa*, 234 F.3d 744 (1ˢᵗ Cir. 2000). There, a warrant authorized a search of a location identified as building 44, apartment 446. *Id.* at 756. In fact, the investigating officers had intended to search building 45, apartment 446, and this was the only location that they in fact searched. *Id.* The applicant for the warrant had been present at the location before seeking the warrant, and the same officer was present when the search was executed. *Id.* The First Circuit held that the mistaken description of the location did not render the resulting search illegal because "there was no risk that federal agents would be confused and stumble into the wrong house, or would take advantage of their unforeseeable windfall and search houses indiscriminately . . . ." *Id.* (internal punctuation and citation omitted).

The same is true here. Millet and Grant had credible information demonstrating where the defendant lived. They subsequently provided information about that location in a warrant application. The same officers were present when the warrants were executed. The officers specifically knew which building where the defendant resided, and the location was consistent with all locational information set out in the warrant aside from the street number: in other words, the general location of the building, the appearance of the building, and the presence of two vehicles connected to the defendant matched the warrant's descriptions of the place to be searched. Millet and Grant were not confused about the locus of the search, and in fact searches were not conducted anywhere other than at the defendant's residence. Under the *Vega-Figeroa* analysis, the legality of the search was not affected by the erroneous street address.

A similar conclusion has been reached in other cases. For example, in *United States v. Owens*, 848 A.2d 462 (4ᵗʰ Cir. 1988), officers had relied on utility records to obtain an apartment number, which turned out to be incorrect. *Id.* at 465. The officers executed the search at the apartment they had in mind rather than the one indicated by the erroneous information. *Id.* The court noted that because of the layout of apartments, "[n]o other apartments fit that description [set out in the warrant]." *Id.* That is less

3

certain in the case at bar because of the absence of evidence indicating, one way or the other, whether other buildings fit the physical description of the defendant's apartment building as set out in the warrant. Nonetheless, the officers who obtained the information underlying the warrant application were present at the search and thus in a position to ensure that the search would be conducted at the correct location. Further, as in the case at bar, the officers who sought the warrant reasonably relied on the address information provided by the third-party (there, a utility; here, a person who lived in the same building that the officers later sought to search). These factors support the same conclusion reached in *Owens*: "there was no probability of a mistaken search, and we cannot conclude that the inaccurate address in the warrant should operate to invalidate the search." *Id.* (internal punctuation and citation omitted). *See also United States v. Valentine*, 984 F.2d 906, 909 (8th Cir. 1993) (error in street address did not vitiate legality of search, where warrant provides other accurate description of the location).

This case is materially different from *United States v. Williamson*, 1 F.3d 1134 (10th Cir. 1993), where an error in the *only* description included in the warrant rendered the search, conducted at a different location, illegal. Further, the court declines to place reliance on *Colorado v. Royse*, 477 P.2d 380 (Co. 1970), on which the defendant relies. To the extent that *Royse* relies on the Colorado constitution, *see id.* at 381, it obviously is not persuasive here. And to the extent that it purports to construe the federal constitution, *see id.*, the court here chooses to rely on the interpretations of federal courts noted above.[3]

The entry shall be:

For the foregoing reasons, the motion to suppress is denied.

Dated: October 14, 2003

_____
Justice, Maine Superior Court

---

[3] The relevant provisions of the Maine Constitution are coextensive with its federal constitutional analogue. *State v. Tarantino*, 587 A.2d 1095, 1098 (Me. 1991). Thus, there is no need to go beyond the federal authority that excuses the type of mistake made here.

4

STATE OF MAINE V. WALTER S. COBB, II
PENOBSCOT COUNTY SUPERIOR COURT
DOCKET NO. CR-2003-356


ATTORNEYS OF RECORD:


DISTRICT ATTORNEY:

    GREGORY CAMPBELL, ASS'T DISTRICT ATTORNEY
    OFFICE OF THE DISTRICT ATTORNEY
    97 HAMMOND ST
    BANGOR ME 04401


DEFENSE COUNSEL:

    KIRK BLOOMER, ESQ.
    12 ACME RD SUITE 202B
    BREWER ME 04412