# United States Court of Appeals
## For the First Circuit

No. 23-1125

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. VEGA-FIGUEROA, a/k/a Pito Casco,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Montecalvo, Circuit Judges.

Frank D. Inserni Milam for appellant.

Jeniffer Vélez Pérez, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

June 4, 2025

**GELPÍ**, **Circuit Judge**.   Defendant-Appellant José A. Vega-Figueroa ("Vega") is serving multiple life sentences for his role in a 1990s drug-trafficking operation.   In February 2021, Vega sought release from prison by moving for compassionate release.   The district court denied that motion and Vega now appeals, contending that the district court neither adequately addressed his "extraordinary and compelling" reasons for release nor adequately addressed the 18 U.S.C. § 3553(a) sentencing factors.   For the reasons that follow, we affirm.

## I. Background

Vega has appeared before this court many times.   See, e.g., United States v. Vega-Figueroa, 234 F.3d 744, 747 (1st Cir. 2000); United States v. Vega-Figueroa, No. 09-1077 (1st Cir. July 29, 2009); United States v. Vega-Figueroa, No. 12-1754 (1st Cir. Aug. 8, 2012); United States v. Vega-Figueroa, No. 14-1247 (1st Cir. Mar. 31, 2015); United States v. Vega-Figueroa, No. 18-1906 (1st Cir. Aug. 26, 2019).   Consequently, we assume the parties' familiarity with much of the procedural and factual

background and recite here only the information necessary to explain our decision.[1]

In 1994, Vega was charged in the Superior Court of Puerto Rico, Carolina Section, with ten counts related to various criminal offenses. See Vega-Figueroa, slip op. at 1. Those charges included, in relevant part: (1) unlawful possession, use, and transportation of several guns; and (2) two counts of first-degree murder for the deaths of Reynaldo Colón González ("Colón González") and Melvin Flores-Montalvo ("Flores-Montalvo"). Id. On October 11, 1995, a jury acquitted Vega of all charges. Id.

In 1997, however, a federal grand jury returned an indictment against Vega. Id. at 2. It was alleged that Vega, along with a co-defendant, was "in charge of an extensive criminal enterprise involving the sale and distribution of heroin, cocaine, crack cocaine, and marijuana" in Puerto Rico between 1990 and 1997. Vega-Figueroa, 234 F.3d at 748. As the district court in that case described it, the enterprise was a "very dangerous and violent drug gang." See Vega-Figueroa, slip op. at 4. The indictment charged Vega with various counts, including: (1) aiding and abetting in a continuing criminal enterprise; (2) conspiring to distribute in excess of five kilograms of heroin, in excess of

---

[1] The district court's Opinion and Order provides a more fulsome history. See United States v. Vega-Figueroa, No. 3:97-cr-00072-CVR, slip op. at 1-4 (D.P.R. Dec. 12, 2022).

- 3 -

five kilograms of cocaine, and in excess of 100 kilograms of marijuana; and (3) the unlawful use of firearms during and in relation to a drug-trafficking offense. The indictment also listed the aforementioned murders of Colón González and Flores-Montalvo as overt acts in furtherance of the conspiracy. After a thirty-day trial, the federal jury found Vega guilty on all counts.

Following the verdict, a Presentence Investigation Report ("PSR") was prepared; it set forth a base offense level of 43. The PSR included homicide-related facts, which were the basis for an increase in Vega's sentencing exposure under the then-mandatory United States Sentencing Guidelines. The district court sentenced Vega on February 19, 1999. The district court's sentence included concurrent life sentences, one each as to Counts One and Two, and a five-year term as to Count Three.

Shortly after sentencing, Vega appealed his conviction and sentence to this court. See Vega-Figueroa, 234 F.3d 744. In that appeal, Vega raised ten issues, including various evidentiary challenges. Id. at 747-57. We affirmed Vega's conviction after evaluating his contentions. Id. at 758. Following our decision, Vega unsuccessfully continued to seek relief from his sentence. See, e.g., Mot. for Retroactive Appl. of Sentencing Guidelines, No. 3:97-cr-00072-CVR (D.P.R. May 14, 2008), ECF No. 758; Mot. to Vacate Sentence, No. 3:97-cr-00072-CVR (D.P.R. Nov. 12, 2013), ECF

- 4 -

No. 917; Mot. to Validate, No. 3:97-cr-00072-CVR (D.P.R. June 28, 2016), ECF No. 1014.

The procedural history of the present appeal is comparatively short. Vega filed a request for compassionate release with the Bureau of Prisons ("BOP") on May 11, 2020. There, he emphasized his increased risk of complications from COVID-19, given his preexisting medical conditions. On July 20, 2020, the Warden of FCI Coleman -- FCI Coleman being the location where Vega is incarcerated -- denied Vega's request, citing the BOP's "extraordinary measures to contain the spread of COVID-19."[2] Vega then moved for compassionate release in the District of Puerto Rico on February 8, 2021.

Vega's motion was brought pursuant to 18 U.S.C. § 3582(c)(1)(a), the provision governing sentence reductions (colloquially known as the compassionate release provision). Vega argued that he was entitled to relief due, in part, to the BOP's allegedly negligent monitoring and treatment of his type 2 diabetes and his increased risk of COVID-19-related complications due to his diabetes. He also emphasized his "having been placed in jeopardy twice for the same conduct on like charges (murder in the

---

[2] Vega refers to the prison where he is housed as "FCC Coleman," while the government refers to it as "FCI Coleman." Federal Correctional Institution, Coleman, "FCI Coleman," is an Institution located within the Federal Correctional Complex, Coleman, "FCC Coleman." We adopt "FCI Coleman" here.

first degree)."  Finally, Vega asserted that his rehabilitation efforts, analyzed under the 18 U.S.C. § 3553(a) sentencing factors, supported a sentence reduction.

The government opposed Vega's motion, arguing that Vega had presented neither extraordinary and compelling reasons for compassionate release nor evidence that he was not a danger to the community.  The government pressed that Vega's health conditions did not rise to the level of severity required under the U.S.S.G. § 1B1.13 policy statement.[3]  Further, in arguing that Vega continued to present a danger to the community, the government highlighted Vega's central role in the "dangerous and violent" drug gang.[4]

The district court denied Vega's motion on December 12, 2022.  It found that the "roughest part" of the pandemic had passed and that the BOP "had taken necessary steps" to protect

------

[3] We have recognized the section 1B1.13 policy statement as non-binding to prisoner-initiated motions.  See United States v. Ruvalcaba, 26 F.4th 14, 23 (1st. Cir. 2022).  That decision held that the policy statement here was not binding for prisoner-initiated petitions.  Id.  The government makes clear that its briefing below relied on the policy statement as binding because it was "filed on February 19, 2021, before this Court's" Ruvalcaba decision.  Our Ruvalcaba opinion issued on February 15, 2022.  Id.  On appeal, the government concedes that the district court incorrectly treated the section 1B1.13 policy statement as binding.

[4] The government also noted Vega's in-prison infractions, including his participation in a fight in 2004, his possession of a weapon in 2005, and his having not followed safety regulations in 2016.

incarcerated individuals. It further found Vega's medical conditions fell outside of the U.S.S.G. § 1B1.13(b) policy statement, which it considered binding. The district court also rejected Vega's argument on acquitted conduct, stating that acquitted conduct could be used in making guideline determinations. On the parties' section 3553(a) arguments, the district court determined that, "on balance," Vega was "still a danger to the community." It thus concluded Vega had not met the requirements for relief under 18 U.S.C. § 3582.

This appeal followed.

## II. Discussion

### A. The Legal Framework

We begin our discussion with a brief explanation of the statutory framework governing compassionate release, "[t]he First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, modified 18 U.S.C. § 3582, the compassionate release statute." United States v. D'Angelo, 110 F.4th 42, 48 (1st Cir. 2024) (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). Under the First Step Act, district courts may "grant prisoner-initiated compassionate release motions once movants 'fully exhaust[]' their administrative remedies with the BOP." Id. at 48 (alteration in original). After administrative exhaustion, federal courts are authorized to reduce an incarcerated individual's sentence if (1) "extraordinary and compelling" reasons exist for doing so;

(2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a) counsel in favor of such a reduction. Ruvalcaba, 26 F.4th at 18-19 (quoting 18 U.S.C. § 3582(c)(1)(A)) (citations omitted).

In reviewing motions for compassionate release, "district courts enjoy broad discretion, and may conduct a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release."[5] United States v. Trenkler, 47 F.4th 42, 47 (1st Cir. 2022) (quoting Ruvalcaba, 26 F.4th at 27-28). To grant relief, the court must find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Finally, the court must "consider any applicable section 3553(a) factors and 'determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case.'" Ruvalcaba, 26 F.4th at 19

---

[5] The United States Sentencing Commission has issued a policy that "extraordinary and compelling circumstances" within the meaning of 18 U.S.C. § 3582(c)(1)(A) fall into six categories. See U.S.S.G. § 1B1.13(b). Those categories are: (1) medical circumstances; (2) age; (3) family circumstances; (4) the defendant having been a "[v]ictim of [a]buse" while in custody; (5) other reasons "similar in gravity to those described in paragraphs (1) through (4);" and (6) the defendant's having "received an unusually long sentence." Id.

(omission in original) (quoting United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021)). "A district court may grant a compassionate release motion only if it finds that the movant satisfies each step." D'Angelo, 110 F.4th at 48 (citations omitted).

We review a district court's denial, or grant, of a motion for compassionate release for abuse of discretion. Trenkler, 47 F.4th at 46 (citing Ruvalcaba, 26 F.4th at 19). "Questions of law are reviewed de novo and findings of fact are reviewed for clear error." Id.

**B. Analysis**

With this background understanding, we turn to the parties' arguments. Vega argues that the district court erred in its assessment of the section 3553(a) factors. He contends that the district court wrongly concluded that leaders of drug-trafficking organizations are categorically ineligible for sentence reductions, even though no such categorical bar exists. He also argues that the district court failed to consider "any and all new" section 3553(a) factors and that a proper analysis of the factors would show that he is not a danger to the community.[6] We

_____

[6] Given our ultimate conclusion -- that the district court's analysis of the section 3553(a) factors is sound -- we decline to address the parties' arguments on the "extraordinary and compelling" reasons to either deny or grant his request for release. See United States v. Texeira-Nieves, 23 F.4th 48, 55 (1st Cir. 2022) ("[A] district court's decision to deny

- 9 -

first address Vega's contention that he provided the district court with "multiple circumstances" and 18 U.S.C. § 3553(a) factors that were not adequately considered.[7]  Vega argues that the section 3553(a) factors counsel in favor of his release.  Citing Third and Fourth Circuit opinions, he argues that the "court must consider any and all new" section 3553(a) factors.  Vega contends that he poses a "minimum risk level" of recidivism.  To support his claim that he does not present a "danger to others," Vega points to his age (54 years old) and his current reliance on crutches.

By contrast, the government argues Vega has failed to demonstrate that he is not a danger to the community.  The government highlights Vega's key role in a "very dangerous and violent drug gang," alongside three infractions he committed while imprisoned.  The government contends that, given those

---

compassionate release may be affirmed solely on the basis of its supportable determination that the section 3553(a) factors weigh against the granting of such relief." (citations omitted)).

[7] There are seven section 3553(a) factors.  They include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," (ii) "the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (iii) "the kinds of sentences available," (iv) the guidelines, (v) "any pertinent policy statement," (vi) "the need to avoid unwarranted sentence disparities[,]" and (vii) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a); see also United States v. Fargas-Reyes, 125 F.4th 264, 269 n.3 (1st Cir. 2025) (describing "how a federal district judge approaches sentencing," including the seven section 3553(a) factors).

circumstances, the district court was "well within its discretion in finding that the 18 U.S.C. § 3553(a) factors weighed against Vega's release." We agree with the government's conclusion.

Vega's argument, that a district court's review of a motion for compassionate release must be holistic and individualized, is sound. As we have cautioned: "[I]n conducting their reviews, district courts should be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the 'extraordinary and compelling' standard." Trenkler, 47 F.4th at 49-50. That is not to say, however, that a district court must provide an exhaustive explanation analyzing every factor. See United States v. Quirós-Morales, 83 F.4th 79, 83 (1st Cir. 2023) ("[D]istrict court[s] need not consider every potential configuration of grounds for compassionate release but, rather, [their] analysis 'should be shaped by the arguments advanced by defendants.'" (quoting United States v. Gonzalez, 68 F.4th 699, 706 (1st Cir. 2023))).

In fact, we have been "pellucid" in explaining "that a district court, when conducting a section 3553(a) analysis, need not tick off each and every factor in a mechanical sequence." Saccoccia, 10 F.4th at 10. Indeed, "we presume -- absent some contrary indication -- that a sentencing court considered all the mitigating factors and that those not specifically mentioned were

- 11 -

simply unpersuasive." Id. at 10 (emphasis added) (citing United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005). Here, our normal presumption applies, as Vega has not developed any argument that "some contrary indication" exists. Given Vega has not made any argument that the presumption described in Saccoccia does not apply here, his argument fails.

The district court appropriately reviewed Vega's rehabilitation efforts and concluded that, on balance, he still presents a danger to the community. It stated that it "recognize[d] [Vega's] efforts towards rehabilitation," and referenced a quote from a "UNICOR" foreman that Vega had "demonstrated his integrity and resolve to rehabilitative change." See Vega-Figueroa, slip op. at 10-11. Given his crimes and prison record, though, the district court still found that a reduction would be inconsistent with reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. We have held that it is appropriate to consider the danger an individual presents to the community under § 3553(a)(2)(C). See D'Angelo, 110 F.4th at 50 (citations omitted). As we recognized in D'Angelo, section 3553(a)(2)(C) concerns "public protection, a concept that necessarily entails the danger that a defendant poses to the community." Id. (citations omitted). The district court's denial of Vega's motion, based on its assessment of the danger he poses to the community,

- 12 -

falls within its discretion.  See id.  And we find no abuse of discretion in the district court's assessment of the section 3553(a) factors.

Vega also argues that the district court erroneously concluded that "leaders of drug-trafficking organizations are not eligible for sentence reductions."  In making this argument, Vega only contends that the district court made this alleged error in its order denying his motion for reconsideration.  That order, however, is not directly at issue on appeal, and Vega does not advance any argument as to how the language in the denial of the motion for reconsideration should influence our understanding of the denial that is at issue before us.  Indeed, the language in the denial that Vega appealed differs sufficiently from the language in the denial for reconsideration, such that Vega needed to advance some argument explaining why the language in the appealed denial indicates that the district court applied a categorical bar.  But, given that Vega made no such argument, we consider this challenge waived for lack of development.  See United States v. Cortés-Maldonado, 939 F.3d 353, 355 (1st Cir. 2019) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)); see also Rife v. One W. Bank, F.S.B., 873 F.3d 17, 19 (1st Cir.

2017) (citing <u>Sparkle Hill, Inc.</u> v. <u>Interstate Mat Corp.</u>, 788 F.3d 25, 29 (1st Cir. 2015)).

## III. Conclusion

For the foregoing reasons, we **<u>affirm</u>**.